**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMY COOPER,

                Plaintiff,

     v.

FRANKLIN TEMPLETON, FRANKLIN
TEMPLETON INVESTMENTS, FRANKLIN
RESOURCES, INC., FRANKLIN TEMPLETON
COMPANIES, LLC, JENNY JOHNSON,
FRANKLIN TEMPLETON CORPS. XYZ 1-10,
JOHN DOES and/or JANE DOES 1-10,

                Defendants.

Civil Action No. 1:21-cv-04692-RA

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................1

II.     STATEMENT OF RELEVANT FACTS..................................................................4

III.    LEGAL STANDARD ......................................................................................8

IV.     ARGUMENT ...............................................................................................8

    A.      Cooper Fails To State A Race or Sex Discrimination Claim. ..............................8

        1.      Cooper Does Not Plead Plausible Facts Sufficient To Establish An Inference Of Discrimination As Required To Sustain Her NYSHRL And NYCHRL Claims..........................................................8

        2.      Cooper's § 1981 Claim Is Deficient Because There Are No Facts To Demonstrate That But-for Her Race, She Would Have Been Treated Differently ...................................................................13

    B.      Cooper Fails To State A Defamation Claim.......................................................14

        1.      Defendants' Statements Were Nonactionable Opinion. ..........................14

        2.      The Complaint Fails to Plausibly Allege Actual Malice.........................18

    C.      Cooper's IIED Claim Should Be Dismissed Because She Fails To Allege Conduct That Could Be Considered Extreme and Outrageous ...........................22

    D.      Cooper Cannot Recast Her Defamation Claim As Another Tort .........................23

    E.      Cooper's Negligence Claim Is Barred By The New York Workers' Compensation Law's Exclusivity Provision. .....................................................24

V.      CONCLUSION .............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adams v. Delta Airlines, Inc.*,
  2017 WL 9674513 (E.D.N.Y. Dec. 18, 2017), *R. & R. adopted as modified*,
  2018 WL 1532434 (E.D.N.Y. Mar. 29, 2018) ......................................................................... 13

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ........................... 14

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001) ................................................................................................... 19

*Anyanwu v. Columbia Broadcasting System, Inc.*,
  887 F. Supp. 690 (S.D.N.Y. 1995) ......................................................................................... 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 8, 9

*Batiste v. City Univ. of N.Y.*,
  2017 WL 2912525 (S.D.N.Y. July 7, 2017) ........................................................................... 11

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) ........................................................................................... 19, 20

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) ........................................................................................................ 14, 17

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014) ..................................................................................... 14, 15, 18

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018) ..................................................................................................... 9

*Coleman v. Grand*,
  523 F. Supp. 3d 244 (E.D.N.Y. Feb. 26, 2021), *appeal filed*, No. 21-800 (2d
  Cir. Mar. 26, 2021) ................................................................................................................. 19

*Coles v. Wash. Free Wkly., Inc.*,
  881 F. Supp. 26 (D.D.C. 1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996) ................................. 18

*Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*,
  140 S. Ct. 1009 (2020) ........................................................................................................... 13

*Conboy v. AT & T Corp.*,
   241 F.3d 242 (2d Cir. 2001) ........................................................................... 22

*Covino v. Hagemann*,
   627 N.Y.S.2d 894 (Sup. Ct. Rich. Cty. 1995) .......................................................... 16

*Cummings v. City of N. Y.*,
   2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) ...................................... 14, 15, 16, 17

*Daniels v. Am. Airlines*,
   2020 WL 9816000 (E.D.N.Y. Sept. 4, 2020) ...................................................... 25

*Dechberry v. N.Y.C. Fire Dep't*,
   124 F. Supp. 3d 131 (E.D.N.Y. 2015) ................................................................. 9

*Diaz v. NBC Universal, Inc.*,
   536 F. Supp. 2d 337 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009) ...................... 23

*Doe #1 v. Syracuse University*,
   468 F. Supp. 3d 489 (N.D.N.Y. 2020) ........................................................... 15, 16

*Fisher v. Wash. Post Co.*,
   212 A.2d 335 (D.C. 1965) ............................................................................. 18

*Ganske v. Mensch*,
   480 F. Supp. 3d 542 (S.D.N.Y. 2020) ...................................................... 14, 16, 17

*Goetz v. Kuntsler*,
   625 N.Y.S.2d 447 (Sup. Ct. N.Y. Cty. 1995) ...................................................... 16

*Graham ex rel. Graham v. Guilderland Cent. Sch. Dist.*,
   256 A.D.2d 863 (3d Dep't 1998) ..................................................................... 23

*Gross v. N.Y. Times Co.*,
   82 N.Y. 2d 146 (1993) ................................................................................. 15

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ................................................................................ 20, 21

*Hayles v. Advanced Travel Mgmt. Corp.*,
   2004 WL 26548 (S.D.N.Y. Jan. 5, 2004) ............................................................. 25

*Haynes v. Alfred A. Knopf, Inc.*,
   8 F.3d 1222 (7th Cir. 1993) ........................................................................... 18

*Hustler Mag., Inc. v. Falwell*,
   485 U.S. 46 (1988) ..................................................................................... 23

*Ingram v. Nassau Health Care Corp.*,
    2019 WL 1332857 (E.D.N.Y. Mar. 25, 2019) ........................................................24

*Johnson v. Andy Frain Servs., Inc.*,
    638 F. App'x 68 (2d Cir. 2016) ..................................................................... 10, 11

*Jones v. Gen. Bd. of Glob. Ministries of United Methodist Church*,
    1997 WL 458790 (S.D.N.Y. Aug. 11, 1997) ..........................................................12

*Kardovich v. Pfizer, Inc.*,
    97 F. Supp. 3d 131 (E.D.N.Y. 2015) ......................................................................4

*Kipper v. NYP Holdings Co.*,
    12 N.Y.3d 348 (2009) ..........................................................................................21

*Konikoff v. Prudential Ins. Co. of Am.*,
    234 F.3d 92 (2d Cir. 2000) ...................................................................................20

*Kronemberg v. Winthrop Univ. Hosp.*,
    2016 WL 2939153 (E.D.N.Y. May 19, 2016) .................................................. 9, 11

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496 (1991) ..................................................................................... 20, 21

*Matthaus v. Hadjedj*,
    49 N.Y.S.3d 393 (1st Dep't 2017) ........................................................................24

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Secs. Litig.*,
    289 F. Supp. 2d 429 (S.D.N.Y. 2003) ...................................................................5

*Minto v. Molloy Coll.*,
    2019 WL 4696287 (E.D.N.Y. Sept. 26, 2019) ................................................. 8, 10

*Mira v. Argus Media*,
    2017 WL 1184302 (S.D.N.Y. Mar. 29, 2017) .........................................................8

*Moore v. City of N.Y.*,
    2017 WL 35450 (S.D.N.Y. Jan. 3, 2017), *R. & R. adopted*, 2017 WL 1064714
    (S.D.N.Y. Mar. 20, 2017) .................................................................................. 9, 13

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ............................................................................................20

*Novick v. Vill. of Wappingers Falls*,
    376 F. Supp. 3d 318 (S.D.N.Y. 2019) .................................................................11

*O'Brien v. King World Prods., Inc.*,
    669 F. Supp. 639 (S.D.N.Y. 1987) ......................................................................24

*Olsen v. Suffolk Cty.*,
 2016 WL 5395846 (E.D.N.Y. Sept. 27, 2016) ...................................................... 13

*Osborne v. Moody's Invs. Serv., Inc.*,
 2018 WL 1441392 (S.D.N.Y. Mar. 22, 2018) ...................................................... 12

*Pippen v. NBCUniversal Media, LLC*,
 734 F.3d 610 (7th Cir. 2013) .............................................................................. 21

*Quintas v Pace Univ.*,
 2001 WL 36388215 (N.Y. Sup. Ct. July 12, 2001), *aff'd*, 23 A.D.3d 246 (1st
 Dep't 2005) ......................................................................................................... 24

*Rand v. N.Y. Times Co.*,
 75 A.D.2d 417 (1st Dep't 1980) .......................................................................... 17

*Reus v. ETC Hous. Corp.*,
 148 N.Y.S.3d 663 (Sup. Ct., Clinton Cty. 2021) ................................................ 19

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
 42 N.Y.2d 369 (1977) .................................................................................... 14, 18

*Rivera v. Time Warner Inc.*,
 56 A.D.3d 298 (1st Dep't 2008) .......................................................................... 21

*Roenick v. Flood*,
 2021 WL 2355108 (S.D.N.Y. June 9, 2021) ...................................................... 12

*Ross v. New York*,
 2016 WL 626561 (S.D.N.Y. Feb. 16, 2016) ...................................................... 24

*Russell v. Davis*,
 948 N.Y.S.2d 394 (2d Dep't 2012) ...................................................................... 16

*Sackler v. Am. Broad. Co.*,
 2021 WL 969809 (Sup. Ct. N.Y. Cty. 2021) ...................................................... 21

*Salu v. Miranda*,
 830 F. App'x 341 (2d Cir. 2020) ......................................................................... 13

*Schaer v. City of N.Y.*,
 2011 WL 1239836 (S.D.N.Y. Mar. 25, 2011) .................................................... 22

*Semper v. N.Y. Methodist Hosp.*,
 786 F. Supp. 2d 566 (E.D.N.Y. 2011) ................................................................. 23

*Silverman v. Daily News, L.P.*,
 11 N.Y.S.3d 674 (2d Dep't 2015) ....................................................................... 16

*Soloviev v. Goldstein,*
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) ................................................................. 10

*St. Amant v. Thompson,*
    390 U.S. 727 (1968) ............................................................................................ 20, 21

*Steinhilber v. Alphonse,*
    68 N.Y.2d 283 (1986) ............................................................................................. 18

*Stuto v. Fleishman,*
    164 F.3d 820 (2d Cir. 1999) ............................................................................. 22, 23

*Sweigart v. Goodman,*
    2021 WL 1578097 (S.D.N.Y. April 22, 2021) ...................................................... 18

*The Ctr. for Med. Progress & David Daleiden v. Planned Parenthood Fed. Of Am.,*
    2021 WL 3173804 (S.D.N.Y. July 27, 2021) ....................................................... 19

*Tongue v. Sanofi,*
    816 F.3d 199 (2d Cir. 2016) ................................................................................... 5

*Torres v. Pisano,*
    116 F.3d 625 (2d Cir. 1997) ................................................................................. 25

*Weiner v, Doubleday & Co.,*
    74 N.Y.2d 586 (1989) ...................................................................................... 18, 21

*Williams v. Classic Sec.,*
    2019 WL 4511953 (S.D.N.Y. Sept. 19, 2019) ..................................................... 10

*Williams v. Time Warner Inc.,*
    2010 WL 846970 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) ...................................................................................................................... 8

*Wu v. Good Samaritan Hosp. Med. Ctr.,*
    815 F. App'x 575 (2d Cir. 2020) .......................................................................... 12

*Yan v. Ziba Mode, Inc.,*
    2016 WL 1276456 (S.D.N.Y. Mar. 29, 2016) ....................................................... 8

## Constitution & Statutes

First Amendment ......................................................................................................... 14

42 U.S.C. § 1981 ("§ 1981") ............................................................................... 3, 10, 13

Civil Rights Law § 76-a(1) ........................................................................................ 19

N.Y. Civ. Rights Law § 76-a ........................................................................... 4, 14, 18, 19

N.Y. Workers' Comp. Law § 29(6) ................................................................... 4, 24, 25

New York City Human Rights Law ("NYCHRL") ............................................... *passim*

New York State Human Rights Law ("NYSHRL") ......................................... 3, 8, 10, 13

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................... 8, 20

*Restatement (Second) of Torts* § 566, cmt. c (1977) ..................................... 18

*Sack on Defamation*, § 4:4:2 (4th ed.) .......................................................... 17

Defendants submit this Memorandum of Law in support of their Motion to Dismiss.[1]

## I.      **INTRODUCTION**

A viral video of Plaintiff Amy Cooper ("Cooper") captures her advancing towards a birdwatcher in Central Park following an exchange about leashing her dog in accordance with park rules, asking him to stop recording her, and pointing her finger at him.  Amended Complaint ("Complaint" or "Compl.") (Dkt. 24) ¶ 1; Speights Decl., Ex. A.  He responds "please don't come close to me" three times.  Speights Decl., Ex. A.  When he continues to record their encounter, she tells him that she will call the police – "I'm gonna tell them there's an African-American man threatening my life" – which she then does, culminating in frantic pleas to the 911 operator for help.  *Id.*  When Cooper finally leashes her dog, the man says "thank you" and stops filming.  *Id.*  The birdwatcher's sister Tweeted the video out at 1:03 p.m. EST on the day of the incident and labeled Cooper a "Karen" for calling the police on the man while she was simultaneously breaking the law by not having her dog on a leash.  *Id.*  Cooper's Central Park confrontation became, by Cooper's own admission, a "racial flashpoint" and "international news" with "millions of people" participating in the conversation regarding her conduct.  Compl. ¶¶ 1-2.  Indeed, the video was seen over 45 million times and the accompanying Tweet has been retweeted, quoted, and/or liked by hundreds of thousands of Twitter users alone.  Speights Decl., Exs. A-B.  Almost immediately, social media users identified Cooper as a Franklin employee, drawing Defendants into this global story.

Seemingly recognizing that her behavior was "unacceptable" and "inappropriate[]," Cooper issued a "sincere" apology that same day, and another the next day, admitting that she

---

[1] Cooper does not name her former employer as a Defendant; rather, she names the parent company, Franklin Resources, Inc. ("Franklin") and now a general corporate services company, Franklin Templeton Companies, LLC. Cooper also incorrectly names "Franklin Templeton" and "Franklin Templeton Investments," which are brand names, not legal entities capable of being sued.

understood why people may now think of her in a "lower light" and that she "made false assumptions."  Speights Decl., Exs. B-C.  On May 26, 2020, the company announced that, following an internal review of the incident, Cooper's employment had been terminated and that it did not tolerate racism of any kind.  Compl. ¶¶ 9-11; Speights Decl., Ex. J.

Notwithstanding her public apologies for perpetuating systemic racism, Cooper is – once again – casting herself as victim, vilifying the birdwatcher, and portraying the incident as merely another "feud between birdwatchers and dog owners."  Compl. ¶¶ 5-6.  Just months after criminal charges against Cooper were dismissed on the ground that she allegedly "learned a lot" through restorative justice classes on racial equity, Cooper filed this lawsuit seeking to shift the blame onto Defendants, allegedly for discriminating against her based on her race (White) and her sex (female), defaming her through certain public statements made about Cooper's termination and the incident, intentionally causing her severe emotional distress, and negligently having a telephone system that somehow "provided Plaintiff's personal cell phone number" to third parties. Compl. ¶¶ 134-135; 147-198.

Despite being given the opportunity to amend her complaint, Cooper's claims all remain fundamentally deficient and still fail as a matter of law.  Cooper does not add any new factual allegations that cure the defects identified in Defendants' original Motion to Dismiss.  Dkt. 13.  To the contrary, Cooper's minimal amendments consist of: repeating, six times, a conclusory allegation attacking the birdwatcher; deleting the words "upon information and belief" in a few instances; and introducing facially inadequate and conclusory allegations of purported comparators without providing any facts to plausibly give rise to an inference of race or gender discrimination.  As in her original complaint, Cooper continues to rely on embellished allegations and generic recitations of the applicable legal standards, rather than facts.  When the conclusory,

sensationalized, and sweeping averments are removed (as they must be to assess the plausibility of her claims), and Cooper's individual allegations are evaluated, it is evident that Cooper does not, and cannot, state a viable claim for relief.

First, Cooper outrageously alleges that Defendants discriminated against her on the basis of her race and sex in violation of 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") in terminating her employment in response to the Central Park incident.   Compl. ¶¶ 147-160.   Cooper's discrimination claims, which largely remain pleaded upon information and belief, fail because she continues to rely on broad, generalized statements that are devoid of *any* facts to plausibly suggest that she was discriminated against, or treated unfairly in any way, much less *because of* her race or sex.   Cooper's failure to plead any facts that suggest an inference of race or sex discrimination is a fundamental pleading deficiency that warrants dismissal.   Likewise, Cooper's discrimination claims against Jenny Johnson ("Johnson") fail for an additional and independent reason that she does not plead that Johnson was personally involved in any allegedly discriminatory conduct.

Second, Cooper's defamation claims still fail as a matter of law because the challenged statements are non-actionable expressions of opinion.   Cooper claims that she was defamed when Defendants allegedly communicated that they had "determined indisputably that Plaintiff was a racist[.]"   Compl. ¶ 2.   Defendants said no such thing.   The statements at issue were protected expressions of opinion that, as recognized in the Complaint, clearly were made in the context of the highly publicized, and extensively commented upon, video of Cooper's conduct, as well as other information well-known to the audience, including Cooper's public apologies and the statement that had been released on Facebook by the man involved in the incident.   Her defamation claims also fail because the Complaint does not plausibly allege that the Defendants, aware of

those same widely publicized facts, made the statements with knowledge of their falsity or with reckless disregard of the truth, as required by New York's anti-SLAPP law in a defamation action, such as this one involving speech on a matter of public interest.  N.Y. Civ. Rights Law § 76-a.

Third, Cooper alleges that Defendants intentionally inflicted emotional distress upon her by making public statements in response to the incident.  Compl. ¶¶ 189-193.  Cooper's conclusory intentional infliction of emotional distress ("IIED") claim is deficient because it is based on the same facts as her failed defamation claims and because she does not, and cannot, plead facts that Defendants engaged in any sort of malicious campaign against her, or that Defendants' conduct was "extreme and outrageous" or "atrocious and utterly intolerable" as required by law.

Fourth, Cooper alleges that Defendants were negligent in having a telephone system that purportedly "provided [her] personal cell phone number" to the public without pleading a single factual detail to support the claim.  Compl. ¶¶ 135; 194-198.  Cooper's negligence claim is also fatally flawed because the New York Workers' Compensation Law provides employees with an exclusive remedy against their employers (and executives, like Johnson) for injuries resulting from alleged negligence.  Cooper's negligence claim is therefore barred as a matter of law by the exclusivity provision of the New York Workers' Compensation Law.

Accordingly, Cooper's claims all remain deficient as a matter of law and Defendants respectfully submit that Cooper's Complaint should be dismissed in its entirety with prejudice.

## II.     STATEMENT OF RELEVANT FACTS[2]

On Memorial Day, May 25, 2020, Franklin learned that Cooper was involved in a confrontation with a man in Central Park that was captured on video and rapidly going viral on

---

[2] The following facts are taken from Cooper's Complaint, which are assumed to be true solely for the purpose of this Motion, as well as from documents that are incorporated into the Complaint by reference, integral to the Complaint, or of which the Court can take judicial notice (and are annexed to the Speights Decl.).  *See Kardovich v. Pfizer, Inc.,*

social media.  Compl. ¶ 1; Speights Decl., Ex. A.  In response to a request that Cooper leash her dog and the man's continued recording of the incident over Cooper's requests for him to stop, Cooper is seen and heard threatening the man that she was going to call the police, stating "I'm gonna tell them there's an African-American man threatening my life[.]"  Speights Decl., Ex. A.  Cooper then places that 911 call and reports that a Black man was threatening her, referring to him as "African-American" multiple times.[3]  *Id.*  At no point in the video does the man threaten or physically approach Cooper, rather he repeatedly asks her not to come close to him.  *Id.*

When the man's sister posted the video to Twitter later that day, it almost immediately went viral, resulting in an explosion of social media posts and comments, as well as "international news" stories about Cooper and her connection to Franklin as Cooper was quickly identified by others as a company employee.[4]  Compl. ¶¶ 1-2; Speights Decl., Exs. A-B.  Contrary to Cooper's allegation that Franklin "created and nurtured" the narrative that she is a "privileged white female 'Karen,'" numerous social media users immediately, and before Franklin issued any statement, began to call Cooper or her conduct racist, invoked incidents of police brutality involving Black men and women, and sparked intense dialogue about systemic racism.  Compl. ¶¶ 1-2; Speights Decl., Ex. F.  In addition to the sustained social media storm, media outlets and other broadcasts

---

97 F. Supp. 3d 131, 137 (E.D.N.Y. 2015) (on a MTD, the Court may consider: (1) the facts alleged in the Complaint and documents attached to it or incorporated in it by reference; (2) documents "integral" to the complaint and relied upon in it; (3) documents or information contained in Defendant's motion if Plaintiff has knowledge or possession of the material and relied on it in framing the Complaint; and (4) facts of which judicial notice may properly be taken under Rule 201 of the FRE.); *see also Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (same); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Secs. Litig.*, 289 F. Supp. 2d 429, 433 n.3 (S.D.N.Y. 2003) (court may take judicial notice of newspaper articles for fact of their publication on a MTD).  Defendants deny the allegations in Cooper's Complaint, including that they engaged in any wrongful, discriminatory, defamatory, or negligent conduct.

[3] The Manhattan District Attorney's Office later reported that Cooper made a second call to the police that was not captured on the video, during which Cooper **falsely accused the man of trying to assault her**.  Speights Decl., Ex. D.  "When responding officers arrived, [] Cooper admitted that the male had not 'tried to assault' or come into contact with her."  *Id.*  Cooper did not press charges against the man.  *Id.*, Ex. B.

[4] The man Cooper confronted also posted a statement on Facebook on the day of the incident.  Speights Decl. Ex. E.

published at least 100 national and international news articles and segments about the incident on May 25 and 26, 2020 alone.  Compl. ¶ 1; Speights Decl., Ex. G.

In an exclusive story with News 4 on May 25, Cooper "sincerely and humbly apologize[d]" for her "unacceptable" conduct, stating that "[i]t's not excusable, it's not defensible[.]"  Speights Decl., Ex. B.  She claimed to understand why people might now think of her in a "lower light" and said that her conduct made her realize that there are "so many people in this country that don't have [the] luxury" of thinking about the police as a "protection agency."  *Id.*

Having been thrust into the narrative around the conduct of one of its employees, the company issued the following statement on Twitter on May 25:



Compl. ¶ 8; Speights Decl., Ex. H.  As indicated in its statement and conceded by Cooper, Franklin immediately began investigating the situation, including communicating with Cooper about the incident.  Compl. ¶ 36; Speights Decl., Ex. H.

At 8:56 a.m. EST the next morning, New York City Mayor Bill de Blasio issued a Tweet describing Cooper's conduct as "racism, plain and simple" and Tweeted that Cooper "called the police BECAUSE he was a Black man.  Even though she was the one breaking the rules.  She decided he was the criminal and we know why."  Speights Decl., Ex. I.

Later that day, the company made the decision based on its internal review of the incident to terminate Cooper's at-will employment effective immediately.  Compl. ¶¶ 9-11; Speights Decl., Ex. J.  The company then issued the following updated statement on Twitter on May 26:



Compl. ¶¶ 9-11; Speights Decl., Ex. J.

Cooper issued another public apology for her actions on May 26 and admitted that she "made false assumptions" and was "the one who was acting inappropriately." Speights Decl., Ex. C. She further acknowledged "the pain that misassumptions and insensitive statements about race cause," stated that she never "imagined that [she] would be involved in the type of incident that occurred" in Central Park, and asked the birdwatcher to "accept [her] sincere apology." *Id.*

On May 27, the NYC Commission on Human Rights launched an investigation into Cooper's conduct stating that after review of the available video there was "no evidence of [the man] threatening or approaching Ms. Cooper" and that "[e]fforts to intimidate Black people by threatening to call law enforcement draw on a long, violent and painful history, and they are unacceptable." Speights Decl., Ex. K. In July 2020, the Manhattan D.A.'s Office initiated a prosecution of Cooper for "Falsely Reporting an Incident in the Third Degree" based on her false phone calls to the police. *Id.*, Ex. L. In filing the charge, the D.A.'s Office stated that it "is committed to safety, justice, and anti-racism, and [] will hold people who make false and racist 911 calls accountable." *Id.*, Ex. D. According to subsequent press reports, the criminal charges against Cooper were dismissed in February 2021 after she completed a restorative justice program that was described by the prosecuting attorney as "focused on the ways in which Ms. Cooper could appreciate that racial identities shape our lives but we cannot use them to harm ourselves or others" and by Cooper's therapist as "a moving experience" through which Cooper "learned a lot." *Id.*, Ex. M.

III.   **LEGAL STANDARD**

To survive a motion to dismiss, Cooper must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This requires Cooper to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*; Fed. R. Civ. P. 8. Cooper must also do more than "tender[] naked assertions devoid of further factual enhancement." *Williams v. Time Warner Inc.*, 2010 WL 846970, at *3 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7 (2d Cir. 2011). She must assert non-conclusory facts sufficient to move "from conceivable to plausible to proceed." *Yan v. Ziba Mode, Inc.*, 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016). As explained below, despite being provided the opportunity to amend, Cooper's Complaint remains devoid of factual allegations necessary to plausibly support her claims.

IV.   **ARGUMENT**

A.   **Cooper Fails To State A Race or Sex Discrimination Claim.**

1.   Cooper Does Not Plead Plausible Facts Sufficient To Establish An Inference Of Discrimination As Required To Sustain Her NYSHRL And NYCHRL Claims.

Cooper's NYSHRL and NYCHRL claims should be dismissed because her mere recitation of their elements is insufficient to sustain a claim under either statute. Cooper must plausibly support her NYSHRL race and sex discrimination claims with facts that she suffered an adverse employment action on account of Defendants' intent to discriminate against her because of her race or sex. *Mira v. Argus Media*, 2017 WL 1184302, at *4 (S.D.N.Y. Mar. 29, 2017) (dismissing plaintiff's discrimination claims); *Minto v. Molloy Coll.*, 2019 WL 4696287, at *8 (E.D.N.Y. Sept. 26, 2019) ("fact-specific allegations of a causal link between the defendant's actions and the

plaintiff's race [or sex] are required" at the motion to dismiss stage).  Under the NYCHRL, Cooper

is likewise "required to plead evidence from which discrimination can be inferred to support a

claim that [she was] treated less well at least in part because of [her race or sex]."  *Moore v. City

of N.Y.*, 2017 WL 35450, at *22 (S.D.N.Y. Jan. 3, 2017), *R. & R. adopted*, 2017 WL 1064714

(S.D.N.Y. Mar. 20, 2017); *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 160 (E.D.N.Y.

2015) ("NYCHRL must meet the standard of pleading set forth in *Twombly and Iqbal*" and are

properly dismissed when plaintiff does not plead a plausible discriminatory motive).  Cooper's

claims are deficient under both standards.

Cooper does not, and cannot, provide any factual allegations beyond her own speculation

to link her race or sex to the decision to terminate her employment.  This is evident from Cooper's

conclusory claims pled "[u]pon information and belief," that Defendants would not have

terminated her employment but for Cooper's sex and race.  *See, e.g.*, Compl. ¶¶ 82, 91.  Without

more, Cooper's claims cannot survive a motion to dismiss.  *See Citizens United v. Schneiderman*,

882 F.3d 374, 384-85 (2d Cir. 2018) ("[a] litigant cannot merely plop 'upon information and belief'

in front of a conclusory allegation and thereby render it non-conclusory."); *Kronemberg v.

Winthrop Univ. Hosp.*, 2016 WL 2939153, at *5 (E.D.N.Y. May 19, 2016) (dismissing plaintiff's

discrimination claim where the allegations were made upon information and belief).

The insufficiency of her discrimination claims is further evident from the fact that Cooper

never pleads any specific details to support her assertion that her termination was discriminatory

based on her being a White female.  Even with the benefit of the opportunity to address the defects

in her claims, Cooper still does not plead any facts to suggest that Franklin criticized Cooper's

performance or conduct in ethnically degrading terms, or that anyone at Franklin made invidious

comments about White females, or that Franklin replaced Cooper with someone outside of her

protected category.  Nor does Cooper allege that the sequence of events leading to her termination reflected race or sex bias by anyone at the company.[5]  *See Minto*, 2019 WL 4696287, at *11 (plaintiffs' bald assertions of race and sex discrimination, "unsupported by any comments, actions … do not permit the court to infer that defendant . . . possessed a discriminatory motive"); *Williams v. Classic Sec.*, 2019 WL 4511953, at *4 (S.D.N.Y. Sept. 19, 2019) (no plausible inference of discrimination where plaintiff did not plead, *inter alia*, that "his employers ever expressed any racial animus in their comments or statements to him").

Cooper's unsupported allegations sprinkled throughout her Complaint that she was treated differently in terms of discipline as compared to purportedly similarly-situated males are insufficient to raise an inference of discrimination based on her sex or race.  In her Complaint, Cooper refers to three alleged "comparators," sometimes by name and title, but with little else.[6] Compl. ¶¶ 29-31, 104-128.  Cooper does not provide any facts, as she must, to plausibly support her contention that these male employees who spanned different business units and roles across the globe were similarly situated to her in all material respects.  *See Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (affirming dismissal of § 1981, NYSHRL and NYCHRL discrimination claims for failure to raise an inference of discrimination and explaining that a "plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself").  To the contrary – even accepting Cooper's limited factual assertions as true (as Defendants must for the purpose of

---

[5] To the contrary, the sequence of events leading to Cooper's termination was the product of her actions (not her race or sex), and the implausibility of Cooper's discrimination claims are highlighted by the fact that she admits to engaging in the conduct for which she was terminated (i.e., the Central Park incident) in the Complaint.  *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249-50 (E.D.N.Y. 2015) (dismissing discrimination claims where "the Amended Complaint itself states a basis for [the plaintiff's] termination that is independent from his race [and] gender" and "indicates that his termination was the product of his actions").

[6] Cooper does not identify one of her alleged comparators by name, but admits that he is "Caucasian."  Compl. ¶ 110.  She likewise does not allege another comparator's (Chuck Johnson's) race (because he was also White).

this motion), Cooper's own allegations contradict her claim that she and these individuals are proper comparators.  For instance, Cooper admits that she was a "Portfolio Manager," but then compares herself to individuals in roles that are vastly different on their face, such as the "head of Franklin Templeton's Asia Pacific distribution," "executives," and a former member of the "board of directors," in an entirely conclusory fashion without any factual basis to support the alleged comparisons. Compl. ¶¶ 29-31, 104, 109, 142.

Cooper tellingly does not plead any other facts to show that she and these (facially distinct) alleged comparators were similarly situated in all material respects.  For example, Cooper does not plead their job content, responsibilities, duties, performance, length of experience, qualifications, whether they reported to the same supervisor(s) as her, and whether they were subject to the same standards governing their performance, evaluation, and discipline as her. *Johnson*, 638 F. App'x at 70 (affirming dismissal of claims where plaintiff did not allege that she and her comparator had similar job descriptions or responsibilities); *Batiste v. City Univ. of N.Y.*, 2017 WL 2912525, at *9 (S.D.N.Y. July 7, 2017) (dismissing discrimination claim because, *inter alia*, the complaint failed to plead any facts regarding the comparators' job descriptions or responsibilities, even though plaintiff identified comparators by name); *Kronemberg*, 2016 WL 2939153, at *5 (allegation that "defendants discriminated against [plaintiff] by supervising [her] in a harsher manner than similarly situated white employees" was insufficient to state a claim because it did not sufficiently allege how the other employees were similarly situated).

Cooper also does not allege facts to plausibly support that she and her alleged comparators engaged in comparable conduct.  *See Novick v. Vill. of Wappingers Falls*, 376 F. Supp. 3d 318, 343 (S.D.N.Y. 2019) ("To be similarly situated in all material respects, Plaintiff must show that similarly situated employees who went undisciplined engaged in comparable conduct.").  Indeed,

Cooper does not identify any non-White male (much less one in a comparable position to her) who was also captured on video invoking another's race to threaten police involvement or making an admittedly false call to the police, and who was then permitted to continue working at Franklin. Generic assertions of unequal treatment – like those put forth by Cooper here – without details to substantiate that Cooper and her alleged comparators engaged in comparable conduct are insufficient to state a claim for discrimination as a matter of law. *See Roenick v. Flood*, 2021 WL 2355108, at *5 (S.D.N.Y. June 9, 2021) (dismissing sex discrimination claims where plaintiff did not plead facts to support that comparators engaged in comparable conduct); *Osborne v. Moody's Invs. Serv., Inc.*, 2018 WL 1441392, at *5 (S.D.N.Y. Mar. 22, 2018) (dismissing sex discrimination claims where plaintiff "[did] not even point to any other male employee" who engaged in the same conduct).

Because Cooper's discrimination claims are devoid of any factual allegations to support her conclusion that she was treated differently *because of* her race or sex, this Court should dismiss them in their entirety.[7] *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 580 (2d Cir. 2020) (dismissing discrimination claims where, as here, plaintiff did not allege "any facts indicating, either directly or by inference, that any of the adverse employment actions taken by…defendants were on the basis of her race…or gender").

Finally, Cooper's discrimination claims against Johnson also fail for the additional and independent reason that Cooper does not plead that Johnson was personally involved in any

---

[7] To the extent that Cooper is attempting to assert discrimination claims based on anything other than her termination, such as the alleged failure to investigate the incident, any such claims are not separately pled and fail for the same reason:  she does not plausibly connect any of these alleged actions to her race or sex.  Further, Cooper's subjective disagreement with the extent of Franklin's internal review is not sufficient to raise an inference of discrimination.  *See Jones v. Gen. Bd. of Glob. Ministries of United Methodist Church*, 1997 WL 458790, at *2 (S.D.N.Y. Aug. 11, 1997) ("plaintiff['s] attempts to challenge the validity of the investigation… may prove that the investigation was poorly conducted and that plaintiff was unfairly discharged, [but] it does not raise an inference of discrimination based on race or sex").

discriminatory conduct.   To establish individual liability under § 1981, the NYSHRL, or the NYCHRL, Cooper must allege that the individual actually participated in the conduct giving rise to the claim of discrimination.   *Moore*, 2017 WL 35450, at \*24 (dismissing claims against individual defendants where plaintiff did not allege that they were personally involved in any of the adverse actions).   Here, Cooper's only substantive allegations regarding Johnson are that she was interviewed on three occasions where she commented on the Central Park incident *after* Cooper was terminated.   *See* Compl. ¶¶ 15-27.   Because Cooper's allegations lack facts connecting Johnson to any allegedly discriminatory actions, they do not give rise to individual liability and should be dismissed.   *See Adams v. Delta Airlines, Inc.*, 2017 WL 9674513, at \*8 (E.D.N.Y. Dec. 18, 2017), *R. & R. adopted as modified*, 2018 WL 1532434 (E.D.N.Y. Mar. 29, 2018); *Olsen v. Suffolk Cty.*, 2016 WL 5395846, at \*16 (E.D.N.Y. Sept. 27, 2016).

        2.    <u>Cooper's § 1981 Claim Is Deficient Because There Are No Facts To Demonstrate That But-for Her Race, She Would Have Been Treated Differently</u>.

The Supreme Court recently clarified that in order to bring a claim for discrimination under § 1981, Cooper "must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right."   *Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (rejecting "the motivating factor test").   As explained, *supra* Section IV.A.1., despite being permitted to amend her Complaint, Cooper fails to allege a single fact to support an inference that Defendants' actions were motivated by discriminatory animus based on her race under the NYSHRL and NYCHRL.   Cooper's pleadings, therefore, fall far short of satisfying the more demanding § 1981 standard – pleading facts demonstrating that '*but for'* her race she would have been treated differently.   *Salu v. Miranda*, 830 F. App'x 341, 346 (2d Cir. 2020) (affirming dismissal of § 1981 claim, explaining that "conclusory assertions repeatedly made 'upon information and belief' are insufficient to provide a basis to conclude that

the race discrimination claim is plausible").

### B.     Cooper Fails To State A Defamation Claim.

"Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017).   Cooper's defamation claims should be dismissed at the pleading stage for two reasons: (1) the statements at issue are nonactionable expressions of opinion; and (2) the Complaint fails to plausibly allege that Defendants made the statements at issue with actual malice, as required by New York's anti-SLAPP law, N.Y. Civ. Rights Law § 76-a.

#### 1.     Defendants' Statements Were Nonactionable Opinion.

Cooper claims that Defendants defamed her by "indisputably" labelling her a "racist." Compl. ¶¶ 2, 14, 20, 25; *Id.* Counts Four and Five.   "Courts in New York have consistently held that terms like 'racist' constitute nonactionable opinion." *Cummings v. City of N. Y.*, 2020 WL 882335, at *20 (S.D.N.Y. Feb. 24, 2020) (citing cases); *see also Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020) ("the term 'xenophobic' . . . is not capable of being proven true or false").   The reasoning of those decisions applies in full force here and requires the dismissal of Cooper's defamation claims.

Because falsity is a "sine qua non" of a libel claim, and because "only assertions of fact are capable of being proven false," only statements of fact are actionable in defamation.  *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *see also Cummings*, 2020 WL 882335, at *15, 20. Accordingly, Defendants cannot be liable for expressing their opinion on Cooper's conduct, "no matter how unreasonable, extreme or erroneous these opinions might be."  *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380-81 (1977).

Whether a statement constitutes fact or opinion is a question of law for the court.  *Chau v.*

*Lewis*, 771 F.3d 118, 128 (2d Cir. 2014).   "The dispositive inquiry ... is whether a reasonable [reader] could have concluded that [the statements were] conveying facts about the plaintiff." *Gross v. N.Y. Times Co.*, 82 N.Y. 2d 146, 152 (1993).   "[S]tatements more likely to be characterized as fact are readily understood by the reader to have a precise, unambiguous and definite meaning and can be objectively characterized as true or false."   *Chau*, 771 F.3d at 128. "[C]ourts make these assessments by looking at the full context of the communication in which the statement appears, while also considering the broader social context or setting surrounding the communication."   *Id.* at 129.   Three factors guide the Court's analysis:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion.

*Cummings*, 2020 WL 882335, at *20; *see also Chau*, 771 F.3d at 129.

Applying the foregoing standards, defamation claims strikingly similar to Cooper's claims recently were considered and rejected by the district court in *Doe #1 v. Syracuse University*, 468 F. Supp. 3d 489 (N.D.N.Y. 2020).   The plaintiffs in *Doe* were prospective or current members of a fraternity who appeared in a "roast" consisting of skits that satirized fraternity members.   468 F. Supp. 3d at 496.   The videotaped event included a skit about a satirical fraternity trying to integrate members of the fraternity into a "newly formed white empire."   *Id.*   The video became "the subject of local and national attention" and led to "campus-wide protests, demonstrations, and outrage." *Id.* at 497.   Like Cooper, the student who appeared on the video alleged that he "was not a bigot." *Id.* at 496. After reviewing the video, and before student disciplinary hearings began, university officials described the students' "words and behaviors" as "extremely racist, anti-semitic, homophobic, sexist, and hostile to people with disabilities."   *Id.* at 497.

The students were suspended and sued university officials for defamation based upon the

characterizations of the students' behavior. *Id.* at 511. The district court granted the defendants' motion to dismiss, holding that no "reasonable reader" could conclude that the challenged statements conveyed facts, rather than an opinion, about the plaintiffs' conduct. *Id.* at 512, 514. This Court reached a similar conclusion in *Mensch*, holding that the term "xenophobic," despite having a "fairly clear meaning" in the context of the Tweet at issue, was "not capable of being proven true or false." 480 F. Supp. 3d at 553. *See also Cummings*, 2020 WL 882335, at *21 ("Plaintiff's accusers viewed her actions as racist – an opinion about her conduct, rather than a factual assertion.").

Cooper's allegation that Defendants defamed her by labelling her a racist thus runs counter to the well-established principle of New York law that such characterizations are pure opinion because they lack a precise meaning capable of being proven true or false. *See Covino v. Hagemann*, 627 N.Y.S.2d 894, 897 (Sup. Ct. Rich. Cty. 1995) (statement that plaintiff's actions were "racially insensitive" were nonactionable opinions because "'[r]acially insensitive' and 'disrespectful racial insensitivity' have no meaning which is readily understood"); *Silverman v. Daily News, L.P.*, 11 N.Y.S.3d 674, 675-76 (2d Dep't 2015) (reasonable reader would have concluded that articles referring to materials authored by the plaintiff as "racist writing" were "opinions, and not facts, about the plaintiff."); *Russell v. Davis*, 948 N.Y.S.2d 394, 395-96 (2d Dep't 2012) (statements interpreting an essay by an electoral candidate as racist and anti-Semitic were opinions based on disclosed facts); *Goetz v. Kuntsler*, 625 N.Y.S.2d 447, 452 (Sup. Ct. N.Y. Cty. 1995) (statement that plaintiff had "venomous feelings against black people" and "developed hatred towards all blacks" was protected opinion).

The legal conclusion that Defendants' statements are opinion and not fact is further supported by the immediate and broader context in which they were made. *See Mensch*, 480 F.

Supp. 3d at 553; *Brian*, 87 N.Y.2d at 51.  The immediate context of the May 26, 2020 statement is Twitter, an Internet forum.  "New York courts have consistently protected statements made in online forums as statements of opinion rather than fact."  *Mensch*, 480 F. Supp. 3d at 552.  As in *Mensch*, the fact that the company's allegedly defamatory statement "appeared on Twitter conveys a strong signal to a reasonable reader that this was Defendant[s'] opinion."  *Id.* at 553[8]

The broader context of the statements also signaled that they were opinion and not fact. The viral video of Cooper's conduct immediately became "international news as a racial flashpoint," Compl. ¶ 1, and was further fueled by Cooper's apologies and the statement posted on Facebook by the man she encountered.  Speights Decl. Exs. A-C, E.  The May 26 Tweet was made in the midst of an ongoing national reckoning about systemic racism which, by the time Johnson's statements were made in June and July, included outrage over the murder of George Floyd.  The "full context" of the communications, thus "signal[ed] readers or listeners that what [was] being read or heard [was] likely to be opinion," not verifiable assertions of fact.  *Cummings*, 2020 WL 882335, at *20; *see also Mensch*, 480 F. Supp. 3d at 552-53 (Tweets related to "Russia hoax" controversy were expressions of opinion, not fact); *Brian*, 87 N.Y.2d at 352 ("broader social setting" is a "useful gauge[]" for distinguishing opinion from fact).

Defendants' statements also are protected because they were based on facts known or available to the public.  *Rand v. N.Y. Times Co.*, 75 A.D.2d 417, 422 (1st Dep't 1980) (opinions are protected when based on "disclosed or assumed nondefamatory facts").  The privilege "extends…to comments on facts that are common knowledge or readily accessible to the reader." *Sack on Defamation*, § 4:4:2 (4th ed.).  "So long as the facts are available to the public," the

---

[8] Johnson's statements similarly were published in online interviews.  *See generally Mensch*, 480 F. Supp. 3d at 553 ("informal and unedited" nature of Internet fora leads "readers [to] give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts").

privilege applies. *Fisher v. Wash. Post Co.*, 212 A.2d 335, 338 (D.C. 1965); *see also Coles v. Wash. Free Wkly., Inc.*, 881 F. Supp. 26, 32 (D.D.C. 1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996); *Restatement (Second) of Torts* § 566, cmt. c (1977) ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation[.]").

Here Defendants' statements, made in the context of facts that were of "common knowledge" or "readily accessible" to the audience, reasonably could be understood only as protected opinion, "no matter how unreasonable, extreme or erroneous" Cooper asserts those opinions might be. *Rinaldi*, 42 N.Y.2d at 380-81. *See generally Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("anyone is entitled to speculate on a person's motives from the known facts of his behavior").[9]

### 2.   The Complaint Fails to Plausibly Allege Actual Malice.

Cooper's claims are independently barred under New York's anti-SLAPP statute, Civil Rights Law, §§ 76-a, because the Complaint fails to plausibly allege that Defendants' statements were made with actual malice, as required by the November 2020 amendments to the statute.

"As a federal court sitting in diversity, this Court must apply Civil Rights Law § 76-a 'because it is a substantive, rather than a procedural, provision.'" *Sweigart v. Goodman*, 2021 WL

---

[9] A statement of opinion that implies it is based upon facts that are unknown to the audience is a "mixed opinion" that may be actionable (subject to all other defenses). *Chau*, 771 F.3d at 129; *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986). Cooper's allegation that the statements here asserted or implied that the opinions expressed were based on a "legitimate investigation" that "determined indisputably" that she was a racist is woefully insufficient to render the statements mixed opinion. Compl. ¶ 2. "In analyzing the words . . ., the court must not isolate them, but consider them in context, and give the language a natural reading rather than strain to read it as mildly as possible at one extreme, or to find defamatory innuendo at the other[.]" *Weiner v, Doubleday & Co.*, 74 N.Y.2d 586, 592 (1989). In this case, Cooper's allegation is belied by the actual language of the statements. Speights Decl. Exs. H, J, N-O. Nowhere did Defendants state that they had conducted a "legitimate" or "thorough" "investigation." Moreover, no reasonable reader would understand that the company's statement that it terminated Cooper following an "internal review of the incident yesterday" meant that, in under 24 hours of learning of Cooper's conduct, Defendants had conducted a comprehensive, forensic investigation of the type the District Attorney's Office could do before it charged Cooper, or that it "determined indisputably" that Cooper was a racist. Compl. ¶ 2. To the contrary, the only reasonable interpretation of the generalized statements made is that they were based on the "disclosed or assumed" facts of the video, Cooper's "sincere apology," and the statement released on Facebook by the man involved in the incident. Compl. ¶ 36; Speights Decl. Exs., A-C, E.

18

1578097, at *2 (S.D.N.Y. April 22, 2021).   Section 76-a applies to claims based upon "any communication in a place open to the public or a public forum in connection with an issue of public interest," or "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest[.]"   Civil Rights Law § 76-a (1) and (2).   The statute provides that the term "public interest" is to be "construed broadly, and shall mean any subject other than a purely private matter."   *Id.* § 76-a(1)(d).

The statements at issue concern a matter of legitimate and intense public interest: the country's long-overdue debate about systemic racism and its effect on the lives of African-Americans.   Compl. ¶ 1.   As Johnson said in the Fortune interview cited in the Complaint:   "I think that what is apparent to us now is the injustice that has happened in society.   And I think the fact that we're now catching— it's obviously been on, but we're catching it on videos and things, puts it first and foremost.   And A CEO has the ability to make change within the sphere in which they operate[.]"   Speights Decl., Ex. O; Compl. ¶¶21-24.[10]   The May 26 Tweet addressed the same subject and, in any event, was published on a public forum, as were the Fortune and Bloomberg interviews.[11]   Accordingly, Cooper may recover only if she "shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false[.]"   Civil Rights Law § 76-a(2).   *See generally Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015) (actual malice "must

---

[10] *See generally Coleman v. Grand*, 523 F. Supp. 3d 244, at *1, 8 (E.D.N.Y. Feb. 26, 2021), *appeal filed*, No. 21-800 (2d Cir. Mar. 26, 2021) (email accusing private figure libel claimant of sexual harassment was the lawful exercise of the constitutional right of free speech in connection with an issue of public interest, triggering anti-SLAPP Act); *Reus v. ETC Hous. Corp.*, 148 N.Y.S.3d 663, 669 (Sup. Ct., Clinton Cty. 2021) (landlord tenant dispute concerning fate of historic building is a matter of public interest); *see also Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001).

[11] *See The Ctr. for Med. Progress & David Daleiden v. Planned Parenthood Fed. Of Am.*, 2021 WL 3173804, at *9 (S.D.N.Y. July 27, 2021) ("Twitter and Rewire News – where the Challenged Statements were published – are both open to the public" for purposes of anti-SLAPP statute); *Coleman*, 2021 WL 768167, at *13 (Facebook is a public forum within the meaning of the anti-SLAPP law).

be alleged plausibly in accordance with Rule 8").

Actual malice is "a subjective standard" requiring proof that a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  Reckless disregard of the truth, in turn, is a term of art requiring "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" and yet published with such doubts.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).[12]  Because actual malice is a subjective standard, "[m]ere negligence does not suffice" to prove a claim.  *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991).  The "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks*, 491 U.S. at 688, 692; *St. Amant*, 390 U.S. at 731 ("reckless conduct is not measured by whether a reasonably prudent man would have . . . investigated before publishing").

In order to plausibly allege actual malice, Cooper must adequately explain how, after viewing the video of her conduct in Central Park, and in the face of her apology, the statements posted on Facebook by the man she encountered, and her communication with Franklin on May 25, 2020, Defendants *knew* that their statements were false or entertained serious, subjective doubts about the truth of those statements.  Speights Decl. Exs. A-C, E; Compl. ¶ 36.  The Complaint contains no such allegations, let alone a plausible one.  Her bald allegations that Defendants "knew that [the statements] were false" (no matter how many times repeated, *see* Compl. ¶¶ 164-166, 182-184), "are inadequate to state a plausible claim for relief." *See Biro*, 807 F.3d at 547 (affirming dismissal of libel complaint for failure to plausibly allege actual malice);

---

[12] As the Supreme Court has cautioned, actual malice "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson*, 501 U.S. at 510; *see also Biro*, 807 F.3d at 546.  The governing standard focuses not "on the defendant's attitude toward the plaintiff," but rather "on the defendant's attitude toward the truth." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir. 2000).

*See generally Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process.").

The Complaint does allege, though only in a conclusory fashion, that had Defendants conducted a legitimate investigation, "they would have known that Plaintiff did not call the police because she was a racist." Compl. ¶ 69; *see also* ¶¶ 36-52. But that amounts to nothing more than a claim of negligence, insufficient as a matter of law to prove actual malice by clear and convincing evidence. *See Masson*, 501 U.S. at 510 ("[m]ere negligence does not suffice"); *Harte-Hanks*, 491 U.S. at 688, 692 ("failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard"); *St. Amant*, 390 U.S. at 730, 731 (evidence that defendant was "heedless" of the consequences to the plaintiff and relied on a single affidavit by a person of unknown credibility who accused the plaintiff of criminal conduct was insufficient to prove actual malice); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("If rather than relying on the rumor mill the defendants had conducted even a cursory investigation, they would have discovered [the truth]. But failure to investigate is precisely what the Supreme Court has said is insufficient to establish reckless disregard for the truth."); *Sackler v. Am. Broad. Co.*, 2021 WL 969809, at *4 (Sup. Ct. N.Y. Cty. 2021) (allegation that defendant "did no research, insufficient research, or research that was not reasonably calculated to determine" the truth of a publication failed to sufficiently plead actual malice as "it is well settled that a failure to investigate will not alone support a finding of actual malice")[13]

In sum, the absence of any plausible allegation of actual malice, combined with the

---

[13] Cooper's allegation that Defendants falsely claimed to have conducted a "proper investigation" adds nothing to her actual malice case. *See* n. 6, *supra*. At no time did Defendants actually use the words that Cooper now invents in her Complaint. *Id.* Further, her allegation is precisely the type of strained interpretation of the Defendants' language that fails to state a claim for defamation. *Weiner*, 74 N.Y.2d at 592. The allegation also ignores information concededly available to the Defendants that further preclude a finding of actual malice. *See generally Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 355 (2009) (plaintiff's reliance on defendant's "failure to employ fact-checkers" or to otherwise investigation the facts insufficient to establish actual malice by clear and convincing evidence); *Rivera v. Time Warner Inc.*, 56 A.D.3d 298, 298 (1st Dep't 2008) ("Actual malice cannot be inferred from factual allegations merely suggesting that [the defendant] had reason to question the accuracy of the information at issue.").

undisputed contents of the video of Cooper's conduct in Central Park on May 25, 2020, bars her defamation claims as a matter of law.

### C. Cooper's IIED Claim Should Be Dismissed Because She Fails To Allege Conduct That Could Be Considered Extreme and Outrageous.

Cooper's IIED claim is devoid of the requisite factual enhancements necessary to support her claim. IIED is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion." *Schaer v. City of N.Y.*, 2011 WL 1239836, at *7 n.4 (S.D.N.Y. Mar. 25, 2011). Indeed, the Second Circuit has made clear that the standard for stating a valid IIED claim is "rigorous, and difficult to satisfy." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). In order to plausibly plead an IIED claim, Cooper must allege facts demonstrating: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *See Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). Cooper does not (and cannot) meet her "rigorous" burden.

Notwithstanding her amendments, Cooper's only allegations in support of her IIED claims are that (1) Franklin posted two Tweets (one on May 25 and the second on May 26) in response to the incident in Central Park. Neither Tweet identified Cooper by name, and both Tweets made clear that the company does not condone or tolerate racism of any kind; and (2) Johnson participated in two interviews (one with Bloomberg on June 2 and one with Fortune Magazine on July 6) where she answered questions about the Central Park incident and reiterated that the company has zero tolerance for racism. Compl. ¶¶ 8-11, 15-25, 132-133, 131-135. Cooper claims that she suffered severe emotional distress stemming from these actions. Compl. ¶¶ 189-193. Cooper's allegations do not come close to pleading facts sufficient to establish that Defendants' actions were "extreme and outrageous."

Liability for IIED arises "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stuto*, 164 F.3d at 827. Courts within this circuit have generally found that allegations of humiliation, discrimination, harassment, and publication without consent are insufficient to satisfy the rigorous standard for extreme and outrageous conduct that is essential to pleading a plausible IIED claim. *See e.g., Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) (noting that "New York Courts are reluctant to allow IIED claims in employment discrimination cases" and explaining that "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of IIED because the conduct alleged is not sufficiently outrageous"); *Graham ex rel. Graham v. Guilderland Cent. Sch. Dist.*, 256 A.D.2d 863, 864 (3d Dep't 1998) ("the use of religious, ethnic or racial aspersions to denigrate a person … is not sufficiently egregious conduct to sustain [an IIED claim].").

The facts alleged by Cooper fall far short of supporting a claim that Defendants engaged in any sort of malicious campaign against her, or that Defendants' conduct was "atrocious and utterly intolerable." Cooper's claim is thus insufficient as a matter of law.

### D.   Cooper Cannot Recast Her Defamation Claim As Another Tort.

Cooper's IIED claim fails for the independent reason that it is nothing more than an inappropriate attempt to recast her deficient defamation claims as a tort. It is well-settled that tort claims "aimed at controlling the same speech that is the basis of a libel claim" should not be entertained "under less stringent standards." *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 345 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009); *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 57 (1988). Under New York law, a tort claim based on the same conduct underlying a

defamation claim fails as a matter of law, because "New York cases have held that a separate cause of action for what are essentially defamation claims should not be entertained." *Anyanwu v. Columbia Broadcasting System, Inc.*, 887 F. Supp. 690, 693 (S.D.N.Y. 1995) (collecting cases).

Because Cooper's IIED claim is predicated on the same conduct underlying her defamation claims, it is nothing more than an inappropriate attempt to recast her defamation claim as a tort and should, therefore, be dismissed. *See Matthaus v. Hadjedj*, 49 N.Y.S.3d 393 (1st Dep't 2017) (dismissing under NY law an IIED claim paired with a defamation claim).

### E. Cooper's Negligence Claim Is Barred By The New York Workers' Compensation Law's Exclusivity Provision.

Cooper's negligence claim is entirely barren of facts and is fatally flawed. "It is well settled within the Second Circuit that common law negligence claims are barred by the New York[ ] Workers' Compensation Law." *Ingram v. Nassau Health Care Corp.*, 2019 WL 1332857, at *9 (E.D.N.Y. Mar. 25, 2019). The Workers' Compensation Law provides employees with an exclusive remedy against their employers for injuries resulting from negligence. N.Y. Workers' Comp. Law § 29(6) ("The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee."); *see Ross v. New York*, 2016 WL 626561, at *10 (S.D.N.Y. Feb. 16, 2016) (dismissing negligence claim as "precluded by New York Workers' Compensation Law, which provides the exclusive remedy for an employee's negligence claims against his employer."); *Quintas v Pace Univ.*, 2001 WL 36388215 (N.Y. Sup. Ct. July 12, 2001), *aff'd*, 23 A.D.3d 246, 247 (1st Dep't 2005) (dismissing claims of negligence as "barred by the exclusivity provision of the Workers' Compensation law"). This is the case even where the alleged injuries are mental (*e.g.,* emotional stress), rather than physical. *O'Brien v. King World Prods., Inc.*, 669 F. Supp. 639, 641 (S.D.N.Y. 1987) (dismissing claims for mental injuries stemming from employer's alleged negligence as barred by the exclusivity of remedies provision).

Cooper makes no attempt to remedy her defects in the Complaint.  Cooper's negligence claim remains predicated on an alleged disclosure on May 25, 2020, by the company's "telephone system" of her personal cell phone number, that somehow "provided [Cooper's] personal cell phone number" to people "seeking to make threats to and harass the Plaintiff because of her race and/or gender." [14]  Compl. ¶¶ 134-135, 194-198.  Accepting these far-fetched allegations as true (for purposes of this motion only), any purported injuries (including any "emotional distress"), therefore, arose out of and/or occurred in the course of Cooper's employment and are covered by the New York Workers' Compensation Law.  Because the New York Workers' Compensation Law provides Cooper's exclusive remedy, her negligence claim against Franklin and Johnson is barred as a matter of law.  *See Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997) (dismissal of negligence claim based upon the employer's alleged failure to prevent a hostile work environment because the workers' compensation exclusivity provision "can and does bar state common law negligence claims"); *Daniels v. Am. Airlines*, 2020 WL 9816000, at *22 (E.D.N.Y. Sept. 4, 2020) (dismissing negligence claim against company and its CEO that was predicated on the company's alleged failure to ensure that plaintiff was not bullied because it was barred by the Workers' Compensation Law); *Hayles v. Advanced Travel Mgmt. Corp.*, 2004 WL 26548, at *14 (S.D.N.Y. Jan. 5, 2004) (negligence claims against employer and its executives were barred by the exclusive remedy provision).  Accordingly, Cooper's negligence claim should be dismissed.

## V.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss, together with such other and further relief as this Court deems appropriate.

---

[14] Other than Cooper's generic use of the term "Defendants," there are no factual allegations that Johnson had personal knowledge, involvement, or participation with respect to the company's telephone system or this alleged disclosure.

Dated: October 6, 2021                    Respectfully submitted,

                                          Morgan, Lewis & Bockius LLP

                                          By: */s/ Grace E. Speights*
                                              Grace E. Speights (*pro hac vice*)
                                              1111 Pennsylvania Avenue, NW
                                              Washington, D.C. 20004-2541
                                              Tel: 1.202.739.5189
                                              Email: grace.speights@morganlewis.com

                                              Jonathan Albano (*pro hac vice forthcoming*)
                                              One Federal Street
                                              Boston, MA 02110-1726
                                              Tel: 1.617.341.7700
                                              Email: jonathan.albano@morganlewis.com

                                              Nicole M. Zito
                                              101 Park Avenue
                                              New York, NY 10178-0060
                                              Tel: 1.212.309.6707
                                              Email: nicole.zito@morganlewis.com

                                              *Attorneys for Defendants*