# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AMY COOPER | : | |
| Plaintiff, | : | |
| | : | Civil Action No.: |
| v. | : | 1:21-cv-04692-RA |
| | : | |
| FRANKLIN TEMPLETON, FRANKLIN | : | |
| TEMPLETON INVESTMENTS, FRANKLIN | : | |
| RESOURCES, INC., FRANKLIN TEMPLETON | : | |
| COMPANIES, LLC, JENNY JOHNSON, | : | |
| FRANKLIN TEMPLETON CORPS. XYZ 1-10, | : | |
| JOHN DOES and/or JANE DOES 1-10, | | |
| Defendants. | | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS**

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................2

INTRODUCTION ............................................................................................................5

STATEMENT OF FACTS ..................................................................................................6

LEGAL ARGUMENT .....................................................................................................11

    A.  The Motion to Dismiss Should be Denied Because the Plaintiff far Exceeds the
    Thresholds Required to Survive a Rule 12(b)(6) Motion................................11

        1. and 2. The Facts Pled in the Plaintiff's Amended Complaint Far Exceed the
        Thresholds Required to Sustain Her Claims……………………………………..12

    B.  1. The Defendants' Statements are Actionable Because They Implied a Basis in
        Undisclosed Facts to the Reasonable Reader……………………………………21

        2. The Plaintiff is not Subject to the Actual Malice Standard Because the
        Defendants' Announcement of the Discriminatory Termination of the Plaintiff
        was not "Lawful Conduct in Furtherance of the Exercise of the Constitutional
        Right of Free Speech"…………………………………………………………26

        2(a). In the Alternative, the Plaintiff's Allegation that Defendants Published
        Statements Telling the Public They had Performed an Investigation Which
        They Knew They had not Performed Constitutes Actual Malice ………………26

    C., D., and E.  *Intentionally left blank*…………………………………………………..29

CONCLUSION..............................................................................................................29

TABLE OF AUTHORITIES

**Cases**

600 W. 115th St. Corp. v. Von Gutfeld, 80 NY2d 130 (1992)........................................................ 24

Afftrex, Ltd. V. General Electric Co., 161 A.D.2d 855 (3d Dep't 1990) .................................... 22

Albert v. Carovano, 851 F.2d 561 (2d Cir. 1988).................................................................... 18

Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010) ...................................................... 19

Ashcroft v. Iqubal, 556 U.S. 662 (2009)................................................................................... 11

ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ............................ 11

Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407 (S.D.N.Y. 2014).............................................. 14

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...................................................................... 11

Bennett v. Health Mgmt. Inc., 92 A.D.3d 29 (N.Y. App. Div. lst Dept 2011)............................ 13

Biro v. Conde Nast, 807 F.3d 541 (2d Cir. 2015)................................................................... 27, 28

Brian v. Richardson, 87 N.Y. 2d 46 (1995) .......................................................................... 22, 23

Brimelow v. New York Times Co., 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ........................ 27

Celle v. Filipino Reporter Entertainers, Inc., 209 F.3d 163 (2d Cir. 2000) ................................. 28

Chen-Oster v. Goldman, Sachs & Co., 2019 WL 3294145 (S.D.N.Y. June 7, 2019) ................. 17

Chiavarelli v. Williams, 681 N.Y.S.2d 276 (1st Dep't 1998)...................................................... 22

Citizens United v. Schneiderman, 882 F.3d 374 (2d Cir. 2018).................................................. 19

Cummings v. City of New York, 2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) .......................... 25

De La Peña v. Metro. Life Ins. Co., 953 F. Supp. 2d 393 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98
   (2d Cir. 2014) ...................................................................................................................... 16

Doe #1 v. Syracuse University, 468 F. Supp. 3d 489 (N.D.N.Y. 2020)................................. 25, 26

Gorokhovsky v. New York City Housing Authority, 552 Fed. Appx. 100 (2d Cir. 2014) .......... 12

Graham v. Long Island R.R., 230 F.3d 34 (2d Cir. 2000) ...................................................... 16, 17

Gross v. New York Times Co., 82 N.Y.2d 146 (1993) ...................................................... 22, 23, 24

Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657 (1989) ............................... 28

Hassan v. Dr. Kenneth Spicer, 2006 WL 228958 (E.D.N.Y. Jan. 31, 2006)............................... 22

Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235 (1991)............................................................... 22

Joye v. PSCH, Inc., 2016 WL 6952252 (S.D.N.Y. Nov. 28, 2016) ............................................. 17

Kipper v. NYP Holdings, Co., 12 NY3d 348 (2009)...................................................................... 29

Leibowitz v. Cornell Univ., 584 F. 3d 487 (2d Cir. 2009) ............................................................ 14

Littlejohn v. City of New York, 795 F. 3d 297 (2d Cir. 2015)................................................. 11, 14

McGuinness v. Lincoln Hall, 263 F.3d 49 (2d Cir. 2001)............................................................. 18

Michel v. NYP Holdings, Inc., 816 F.3d 686 (11th Cir. 2016) ..................................................... 28

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102 (2d Cir. 2013) ..................... 12

Minto v. Molloy College, 2019 WL 4696287 (E.D.N.Y. Sept. 26, 2019) .......... 11, 14, 15, 16, 18

Mira v. Argus Media, 2017 WL 1184302 (S.D.N.Y. Mar. 29, 2017) .................................... 14, 15

Moore v. City of New York, 2017 WL 35450 (S.D.N.Y. Jan. 3, 2017)......................................... 21

Nguedi v. Fed. Rsrv. Bank of New York, 2019 WL 1083966 (S.D.N.Y. Mar. 7, 2019) ............. 12

Norton v. Sam's Club, 145 F.3d 114 (2d Cir. 1998) ..................................................................... 16

Novick v. Village of Wappingers Falls, 376 F. Supp. 3d 318 (S.D.N.Y. 2019)........................... 17

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007) .............................................................................. 15

Rivera v. Time Warner, Inc., 56 AD3d 298 (1st Dept. 2008) ....................................................... 29

Russell v. Davies, 948 N.Y.S. 2d 394 (2d Dep't 2012)................................................................ 25

Silverman v. Daily News, L.P., 11 N.Y.S. 3d 674 (2d Dep't 2015)...........................................25

Soloviev v. Goldstein, 104 F. Supp. 3d 232 (E.D.N.Y. 2015) ....................................................20

St. Amant v. Thompson, 390 U.S. 727 (1968) ...........................................................................28

Steinhilber v. Alphonse, 68 N.Y.2d 283, (1986) ................................................................24, 25

Syeed v. Bloomberg, L.P., 2021 WL 4952486 (S.D.N.Y. Oct. 25, 2021)............................12, 13

Taylor v. Seamen's Soc'y for Children, 2013 WL 6633166 (S.D.N.Y. Dec. 17, 2013) ..............17

Vega v. Hempstead Union Free School Dist., 801 F.3d 72 (2d Cir. 2015) ..................................14

Velazco v. Columbus Citizens Found., 778 F.3d 409 (2d Cir. 2015)...........................................13

Williams v. Classic Security at 2019 WL 4511953 (S.D.N.Y. Sept. 19, 2019) ....................15, 20

Wong v. Yoo, 649 F. Supp. 2d 34 (E.D.N.Y. 2009).....................................................................15

**Statutes**

§ 1981.................................................................................................................................14, 26

§ 76-a .........................................................................................................................................27

NYCHRL ........................................................................................................................12, 13, 26

NYSHRL.....................................................................................................................................26

**Treatises**

Robert D. Sack, Sack on Defamation § 16:2.2 at 16.7-8 (4th ed. 2010) ......................................28

## INTRODUCTION

The events in Central Park underlying this litigation did not occur because the Plaintiff Amy Cooper ("Plaintiff" or "Amy") is a racist -- they occurred because Amy was cornered and alone and, quite reasonably, frightened for her safety.

The Defendants' motion nevertheless asserts a position of moral superiority which is neither accurate nor relevant. Contrary to the theme the Defendants seek to perpetuate, the Plaintiff's Complaint in no way attempts to vilify Christian Cooper. Rather, the Plaintiff's Complaint conveys simply that there is another side to the story. Neither does this lawsuit attempt to shift blame for the events in Central Park from the Plaintiff to the Defendants; this litigation's only objective is to hold Defendants accountable for the damage *they* caused and exacerbated in its aftermath.

As Amy's employer, the Defendants are held by Federal, State, and City law to a different standard than social media and the public-at-large. The only thing the Defendants' Exhibits show is that a present-day search of the internet produces results purporting to adjudge Amy guilty, which misses the critical points of both this lawsuit and motion. Not only do these Exhibits miss the point, but many did not exist when Defendants terminated Amy on May 26, 2020. Moreover, the Exhibits are completely meaningless without a Certification from a person with personal knowledge that any of those items were even consulted in their decision to terminate the Plaintiff.

In plain contrast to the Defendants' characterization of the Plaintiff's pleading, the Amended Complaint contains 139 paragraphs of substantive and specific *Factual Background*, the heart of which is not addressed by the Defendants' motion. The Plaintiff's allegations far exceed the threshold required to overcome a Rule 12(b)(6) motion to dismiss. The Defendants' multiple explicit references to race and racism in conjunction with their public celebrations of Plaintiff's termination fatally undermine the credibility of their refrain that race played no role in their

decision. Moreover, there remains no legitimate explanation for why Amy was treated so disparately from her male comparators, and no explanation for why Defendants relied entirely on social media to determine her discipline when it avowed it would not do so for the personnel decisions of co-workers.

By telling millions of people that they performed an investigation when no investigation was performed, the Defendants' statements against Amy were converted to actionable mixed opinions. There is no legitimate question under the law that by implying that they conducted an investigation, and that Amy was determined to be a racist and terminated based on that investigation, the Defendants crossed the bright-line threshold from nonactionable opinion to actionable defamation. That the Defendants' Exhibits contain nothing but publicly available documents pulled from an internet search is not merely insufficient to support a motion to dismiss, but is dispositive of actual malice and the knowing falsity of their statements.

## STATEMENT OF FACTS

*The Plaintiff's Statement of Facts are drawn from the allegations contained in the First Amended Complaint, which is incorporated by reference herein. Citations in this Statement of Facts are to the Paragraph numbers in that Complaint.*

The Plaintiff was confronted in Central Park by Christian Cooper (no relation to the Plaintiff) while walking her dog alone on May 25, 2020. This confrontation became international news as a racial flashpoint, characterized as a privileged white female "Karen" caught on video verbally abusing an African American male with no possible reason other than the color of his skin. ¶1.

This characterization was nurtured and exacerbated by the public statements published by the Defendants to millions of people implying that it had performed a legitimate investigation

into its employee and the events of May 25, 2020, that a legitimate investigation determined indisputably that Plaintiff was a racist, and that due to the results of their legitimate investigation, the Plaintiff's employment with the Defendants was terminated. ¶2. The Defendants' alleged investigation and results provided legitimacy to the "Karen" story, and provided justification for those seeking the destruction of the Plaintiff's life. ¶3. The Defendants never performed an investigation into the confrontation between Plaintiff and Mr. Cooper in Central Park on May 25, 2020, and knew they never performed an investigation; if they had, it would have shown that the Plaintiff did not shout at Mr. Cooper or call the police because she was a racist. *See* ¶4.

Rather, the Plaintiff did these things because she was alone in the park and frightened to death after being selected as the next target of Mr. Cooper, an overzealous birdwatcher engaged in Central Park's escalating feud between birdwatchers and dog owners. *See* ¶5. Mr. Cooper was a birdwatcher with a history of aggressively confronting dog owners in Central Park who walked their dogs without a leash. *See* ¶6. It was Mr. Cooper's practice and intent to cause dog owners to be fearful for their safety and the safety of their dogs, and he had a history of doing so to people, including to at least one African American man who wrote national media stating: "when I saw that video, I thought, I cannot imagine if he approached [Amy] the same way, how she may have genuinely been afraid for her life." *See* ¶¶6, 52-64.

But the Defendants nevertheless perpetuated and legitimized the story of "Karen" vs. an innocent African American, with reckless disregard for the falsity of their statements or the destruction of Plaintiff's life in the process. *See* ¶7.

On the date of the incident, the Defendants published a statement on Twitter about the Central Park incident stating:

> We take these matters very seriously, and we do not condone racism of any kind. <u>While we are in the process of investigating the</u>

<u>situation</u>, the employee involved has been put on administrative leave. (Emphasis added). ¶8.

On the following day, the Defendants published a second statement on Twitter, now announcing:

> <u>Following our internal review of the incident in Central Park yesterday</u>, we have made the decision to terminate the employee involved, effective immediately. We do not tolerate racism of any kind at Franklin Templeton. (Emphasis added). ¶9.

The May 26, 2020 statement on Twitter was "liked" by over 277,000 people, and seen by countless more. There can be no question that the public to whom Defendants published the May 26, 2020 statement knew and understood that the subject of Defendants' statement, "the employee involved," was Plaintiff, and that this statement was interpreted to mean an investigation was conducted by Defendants and determined the Plaintiff to be a racist. ¶¶10-14. The following week on June 2, 2020, the President and CEO of Franklin Templeton, Jenny Johnson, continued by participating in a video interview carried on Bloomberg.com and answered questions exclusively about the Defendants' termination of Plaintiff's employment. ¶15. During that interview, Ms. Johnson again implied that the facts of this matter were fully reviewed prior to the Defendants' decision to terminate Plaintiff's employment, and that the Defendants terminated Plaintiff's employment because "the facts were undisputed in this case." ¶¶16-20.

Over a year later on July 15, 2021, Ms. Johnson participated in a Yahoo! Finance video interview and answered questions about the Defendants' termination of the Plaintiff's employment. ¶26. During that interview, Ms. Johnson contrasted that situation to a second, more recent situation involving a Franklin Templeton employee. ¶¶27-28. It is believed that the second

situation involving a Franklin Templeton employee to which Ms. Johnson referred was Vivek Kudva, a nonwhite Indian male and a senior executive employed by Franklin Templeton. ¶¶28-29. Mr. Kudva was given a massive fine and a one-year market ban by the Securities and Exchange Board of India for using non-public information to sell approximately $4,000,000 in Franklin Templeton debt funds which were then closed weeks later. ¶30.

During the July 15, 2021 interview, Ms. Johnson again implied that the Defendants possessed information about the Plaintiff which the public did not have: "[w]e felt and we feel confident in the due diligence we did and the process to make our evaluations, our decision." ¶32. Ms. Johnson made clear that the company does not believe it is appropriate to rely on social media to make personnel decisions in high-profile cases involving Franklin Templeton employees, and that they did not do so in the case of Mr. Kudva:

> "[t]he world has gotten to the point where social media comes to very quick decisions without all the facts…and I had this conversation with some employees over an issue recently and my comment to those employees was, here's why social media doesn't have the facts right on this particular situation, and here is why we're going to stand by and I am going to stand by our decision. Because you want to work for a company where the firm has your back. That if people don't get the facts right, the company isn't just going to throw you under the bus." ¶33; ¶¶75-81.

The Defendants' only communication with Plaintiff about the May 25, 2020 incident in Central Park involving the Plaintiff occurred that same night while they knew the Plaintiff was profoundly distraught and fearful of her physical safety. ¶¶36-37. The Defendants performed no investigation into the May 25, 2020 incident in Central Park involving Plaintiff other than read social media -- the precise opposite of what Ms. Johnson revealed the company's protocol to be in high profile situations, and contrary to their handling of Mr. Kudva's matter. *See* ¶35; ¶¶96-103; Declaration of Grace E. Speights in Support of Motion to Dismiss at Exhibits "A" - "O."

Not only did the Defendants not rely on social media to determine whether or not it would discipline Vivek Kudva, the Defendants have been outspoken about the peril of relying on social media in its public defense of Vivek Kudva. *See* ¶¶33-34.

In another high-profile matter, the Defendants allowed Chuck Johnson to join the Franklin Resources' board of directors in 2013, a position he held until February 2020, despite reports that he was a convicted of "slamm(ing) his wife into a kitchen stove hard enough to break the bones of her face." ¶¶104-108. Another male employee, C.K.,[1] has been employed by the Defendants since at least 2007, despite multiple instances and complaints of sexual harassment and corporate wrongdoing. ¶¶109-118. When the Plaintiff complained about C.K., nothing was done, and she was told to "keep it quiet." ¶119.

Beginning May 25, 2020, the Plaintiff's life was destroyed as she was inundated with some of the most vile race and gender-based text messages, emails, and telephone calls imaginable. ¶¶129-138. A representative text message sent to the Plaintiff's personal cell phone said: "You racist cunt bitch. Fuck that dog too, stupid bitch. You all over social media lying on a black man. Stupid typical white bitch." ¶137. The Plaintiff received dozens of other text messages, emails, and telephone messages like this one. ¶138. The Plaintiff was so distraught that she contemplated suicide. ¶139.

---

[1] The comment in Defendants' brief that Plaintiff "does not identify (C.K.) by name" is disappointing and disingenuous. The Defendants are aware that this was done by the Plaintiff as a courtesy to protect the identity of C.K. whose name, unlike the other two comparators, was not previously in the news. A letter was sent to the Defendants by Plaintiff's counsel explaining this, and providing C.K.'s full name, on September 27, 2021.

<u>LEGAL ARGUMENT</u>

**A. The Motion to Dismiss Should be Denied Because the Plaintiff far Exceeds the Thresholds Required to Survive a Rule 12(b)(6) Motion**

It is flatly inaccurate to characterize the Plaintiff's 139 paragraphs of *Factual Background* in the Amended Complaint as "mere recitation of (the) elements" of the causes of action in this litigation. The factual allegations contained in the Plaintiff's Amended Complaint far exceed those at issue in the case law cited by the Defendants in support of dismissal, in both substance and specificity. The Defendants' claims of implausibility are contradicted by the precedents presented in their brief, and are more accurately described as disputes of fact properly decided by a jury after the conclusion of discovery.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct charged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the factual content alleged by the Complaint to reach the facial plausibility threshold must be accepted as true, and is entitled to all reasonable inferences. *See* <u>ATSI Communications, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007). Stated another way, it is the plaintiff's obligation to merely "nudge[] its claims across the line from conceivable to plausible…" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). At this stage, a plaintiff need only show "plausible support to a minimal inference of discriminatory motivation." <u>Littlejohn v. City of New York</u>, 795 F. 3d 297, 311 (2d Cir. 2015). The complaint is not required to contain "detailed factual allegations" to overcome a motion made under Rule 12(b)(6). <u>Minto v. Molloy College</u>, 2019 WL 4696287, at *5 (E.D.N.Y. Sept. 26, 2019) *quoting* <u>Iqbal</u> at 678 ("A complaint need not contain detailed factual allegations, but must contain more than mere 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' or 'naked assertions' devoid of 'further factual enhancement.'")

**1. and 2. The Facts Pled in the Plaintiff's Amended Complaint Far Exceed the Thresholds Required to Sustain Her Claims**

<u>The New York City Human Rights Law Standard</u>

The NYCHRL was amended with the explicit objective of being interpreted more liberally than its state and federal counterparts:

> To bring about this change in the law, the Act established two new rules of construction. First, it created a "one-way ratchet," by which interpretations of state and federal civil rights statutes can serve only "'as a *floor* below which the City's Human Rights law cannot fall.'"
>
> Second, it amended the NYCHRL to require that its provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 109 (2d Cir. 2013)(internal citations omitted).

Claims brought under the NYCHRL are analyzed separately, and under a liberal standard. *See* <u>Gorokhovsky v. New York City Housing Authority</u>, 552 Fed. Appx. 100, 101 (2d Cir. 2014)("claims under the NYCHRL are to be evaluated separately from federal and state law claims and given liberal, independent construction.") *citing* <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 109 (2d Cir. 2013). "The NYCHRL must be construed 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" <u>Syeed v. Bloomberg, L.P.</u>, 2021 WL 4952486, *39 (S.D.N.Y. Oct. 25, 2021) *quoting* <u>Nguedi v. Fed. Rsrv. Bank of New York</u>, 2019 WL 1083966, at *10 (S.D.N.Y. Mar. 7, 2019).

Under the NYCHRL, the Plaintiff must show only that she was treated "less well" than others outside her protected characteristic, and that discrimination was among her employer's motivating factors for unequal treatment. *See* <u>Syeed</u> at *40 ("'[Plaintiff] must show that she has been treated less well at least in part 'because of her protected characteristic].'" Under the

NYCHRL, the plaintiff must allege 'that 'unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for "her unequal treatment.")(internal citations omitted). "'It is not uncommon for covered entities to have multiple or mixed motives for their action, and the NYCHRL proscribes such 'partial' discrimination.'" Syeed at *40 *quoting* Velazco v. Columbus Citizens Found., 778 F.3d 409, 411 (2d Cir. 2015).

Even once a case has reached the summary judgment stage, the NYCHRL has a relaxed standard for pretext. "[S]ome evidence that at least one of the reasons proffered by [the] defendant is false, misleading or incomplete ... should in almost every case indicate to the court that a motion for summary judgment should be denied." Bennett v. Health Mgmt. Inc., 92 A.D.3d 29, 45 (N.Y. App. Div. lst Dept 2011). The standard is of course even more liberal at the motion to dismiss stage. *See* Gorokhovsky at 102 ("At the pleadings stage and under such a liberal construction, we conclude that [plaintiff] has stated plausible claims under the NYCHRL for discrimination on the basis of national origin and age.")

In the instant matter, there can be no question but that the Plaintiff was treated less well than her male counterparts who received no discipline after allegations and/or convictions for sexual harassment, domestic battery, corporate misconduct, and fraud. The Plaintiff's outcome was not the only "less well" treatment she received; the Defendants broke with their own protocol, faithfully adhered to in the matter involving Vivek Kudva, a nonwhite male, and terminated the Plaintiff without any investigation other than a rapid perusal of social media. The reasons provided for the disparity of treatment between the Plaintiff and her three male, and in the case of Mr. Kudva, non-white, counterparts remain, at the very least, incomplete.

<u>Inference of the Essential Elements of a *Prima Facie* Case</u>

Courts apply the <u>McDonell Douglas</u> framework to §1981 and New York State Human Rights Law claims. *See* <u>Molloy College</u> at *20 *citing* <u>Littlejohn</u> at 312; <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 n.1 (2d. Cir. 2000). A *prima facie* showing is not required at the motion to dismiss stage; only "plausible support to a minimal inference of discriminatory motivation." <u>Molloy College</u> at *22-23 *citing* <u>Vega v. Hempstead Union Free School Dist.</u>, 801 F.3d 72, 84 (2d Cir. 2015) *additional internal citations omitted.* At the motion to dismiss stage, "plaintiffs must simply allege facts that allow the court, in substance, to *infer* the essential elements of a *prima facie case.*" <u>Molloy College</u> at *23 *citing* <u>Barrett v. Forest Labs., Inc.</u>, 39 F. Supp. 3d 407, 429 (S.D.N.Y. 2014) (emphasis in original).

While discriminatory remarks or invidious comments about the plaintiff's race or gender is one way to achieve the required minimal inference, so is more favorable treatment of an employee outside the protected class, or the sequence of events leading to termination. *See* <u>Littlejohn</u> at 312 *quoting* <u>Leibowitz v. Cornell Univ.</u>, 584 F. 3d 487, 502 (2d Cir. 2009)("'An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'")

In <u>Mira v. Argus Media</u> for example, highlighted by the Defendants as precedent in support of their motion, the Complaint was only dismissed after a finding that not only was there was no suggestion of verbal degradation, but that there was also "no suggestion" of favorable treatment, and "no allegations that the sequence of events leading to (Plaintiff's) termination smacked of

sexism or…discrimination." <u>Mira v. Argus Media</u>, 2017 WL 1184302, *14 (S.D.N.Y. Mar. 29, 2017). The Complaint is <u>Mira</u> was dismissed because there was no plausible link provided by the plaintiff between an isolated comment in September 2013 and her termination in May 2014, not simply because there were not enough discriminatory remarks. <u>Ibid</u>.

Allegations of racially motivated comments are certainly one example of facts which could be pled to save a Complaint from dismissal, but no Court has ever held that such comments or statements are required to survive a motion under 12(b)(6). <u>Williams v. Classic Security</u>, 2019 WL 4511953, at *10-11 (S.D.N.Y. Sept. 19, 2019)  ("[Plaintiff] does not, *for example,* allege that his employers ever expressed any racial animus in their comments or statements to him, nor does [Plaintiff] provide any factual details regarding his allegation that other similarly situated employees of different races were treated differently than he was.")(emphasis added)(internal citations omitted). The plaintiff's failure in <u>Williams</u> was that he failed to allege any facts that would permit the plausible inference that race motivated or contributed to his firing. <u>Williams</u> at *13. ("In sum, [Plaintiff] needs to allege *facts* that would permit the inference that racial discrimination motivated or contributed to his firing in order to survive a Rule 12(b)(6) motion to dismiss.") (emphasis in original).

Discriminatory intent can be inferred through facts alleging that persons outside of the plaintiff's protected class "'were given preferential treatment.'" <u>Molloy College</u> at *23 *quoting* <u>Patane v. Clark</u>, 508 F.3d 106, 112 (2d Cir. 2007). Inference of discriminatory intent is gathered by the Court through an "expansive approach" which "'must rely on the cumulative weight of circumstantial evidence.'" <u>Molloy College</u> at *23 *quoting* <u>Wong v. Yoo</u>, 649 F. Supp. 2d 34, 69 (E.D.N.Y. 2009) *quoting* <u>Norton v. Sam's Club</u>, 145 F.3d 114, 119 (2d Cir. 1998). It is not

uncommon for a Plaintiff in an employment discrimination claim to be without a "smoking gun." Ibid.

Independent and in addition to the disparate treatment between the Plaintiff and her nonwhite and male counterparts, the Defendants' own words and actions provide the required plausible support for a minimal inference of discriminatory motivation. It was the Defendants who implicated the race of their employee with each of its communications to the public, by repeatedly connecting its stated stance against racism with their termination of the Plaintiff. That the Plaintiff would not have been terminated without an investigation but-for her race is plain, because the Defendants simply could not have touted the termination of a nonwhite employee the way they did with Amy. The Defendants' widespread and multiple advertisements of their termination of Amy, all published in conjunction with their purported stance on racism, implicates race sufficiently to overcome a 12(b)(6) motion to dismiss.

### Comparator Evidence

One way a plaintiff may raise an inference of discriminatory intent is by showing that she was treated less favorably than similarly situated employees outside of her protected group. *See* Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).

Issues regarding the appropriateness of a comparator are typically addressed at the summary judgment stage after the parties have had an opportunity to conduct discovery. *See* Molloy College at *23 *citing* De La Peña v. Metro. Life Ins. Co., 953 F. Supp. 2d 393, 414 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014)("Though '[i]ssues regarding appropriate comparators are often addressed in the context of a summary judgment motion following discovery,' courts have granted motions to dismiss where the complaint failed to proffer sufficient

facts regarding comparators to support the contention the comparators were similarly situated to the plaintiffs.")

A comparator need only be similarly situated to a plaintiff in *material respects*. Irrespective of job titles or responsibilities, a plaintiff is properly compared to another employee when those differences are inconsequential to a plaintiff's claims. *See* Chen-Oster v. Goldman, Sachs & Co., 2019 WL 3294145, at *7-8 (S.D.N.Y. June 7, 2019) ("[T]he standard for comparators is rather stringent: though a comparator and plaintiff need not be identical, a comparator must be 'similarly situated to the plaintiff in all material respects.")

What constitutes "all material respects" is case and fact-specific. *See* Novick v. Village of Wappingers Falls, 376 F. Supp. 3d 318, 343 (S.D.N.Y. 2019) *quoting* Taylor v. Seamen's Soc'y for Children, 2013 WL 6633166, at *14 (S.D.N.Y. Dec. 17, 2013)("'What constitutes 'all material respects' varies, of course, from case to case...") The determinative factor is that the plaintiff and her comparator are "subject to the same workplace standards." Ibid.

"A comparator is similarly situated when there is an 'objectively identifiable basis for comparability,' meaning that the comparator and the plaintiff were subject to the same workplace standards and engaged in misconduct of 'comparable seriousness,' but received different punishments." Joye v. PSCH, Inc., 2016 WL 6952252, *18 (S.D.N.Y. Nov. 28, 2016) *quoting* Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000).

A plaintiff demonstrates that she is similarly situated "in all material respects" upon a showing "'that similarly situated employees who went undisciplined engaged in comparable conduct.'" Novick at 343 *quoting* Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000).

"[W]here a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently

17

similar to [the] plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." <u>McGuinness v. Lincoln Hall</u>, 263 F.3d 49, 54 (2d Cir. 2001).

In <u>Molloy College</u>, the plaintiff's allegations were found to be insufficient because the Complaint contained only the vague and "spare allegation" that students of a different race and gender were given preferential treatment. <u>Id</u>. at *27. "'The naked allegation that defendant 'selectively enforced the College rules…against plaintiffs…because they are black …' is too conclusory to survive a motion to dismiss.'" <u>Ibid</u>. *quoting* <u>Albert v. Carovano</u>, 851 F.2d 561, 572 (2d Cir. 1988). The comparators used by the Plaintiff in the instant matter are substantially more specific.

The three comparators here certainly did not hold identical positions to the Plaintiff, but that is not what is required. The comparators need only be similar in *material* respects -- in this instance, the only material respect is their employment by the Defendants. The Defendants want the Court to discount all three comparators because they occupy different positions than the Plaintiff did, but the Defendants do nothing to explain why the difference in those positions is material under the facts of this case. This is not a case where the Plaintiff claims she was entitled to a higher salary or swifter promotion, where comparisons between different levels of employees would be significant. The nuance which might implicate differences between the Plaintiff and her three co-workers is absent here; the Plaintiff is challenging a company-wide double standard between males who receive no scrutiny or discipline for alleged wrongdoing, and a female who instantly received the ultimate punishment.

The Defendant Jenny Johnson herself compared the Plaintiff and Vivek Kudva, because she found their similarities to be particularly apt. As with the Plaintiff, the alleged wrongdoing of

Mr. Kudva and Chuck Johnson were public and high-profile. But unlike the Plaintiff, the Defendants ignored these high-profile alleged wrongdoings, explaining that "[t]he world has gotten to the point where social media comes to very quick decisions without all the facts." The application of the principle to the male employees of the Defendants but not to the Plaintiff makes them comparators in all *material* respects.

"Upon Information and Belief"

Despite Defendants' claims to the contrary, "upon information and belief" is a perfectly viable tool for a plaintiff's pleading. The use of this term chided by courts in the precedent cited by Defendants was incomparable to the use in the instant Plaintiff's Complaint. "Upon information and belief" will make "otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant…" Citizens United v. Schneiderman, 882 F.3d 374, 384-385 (2d Cir. 2018) *quoting* Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). "Upon information and belief" is also appropriately used to make otherwise unsupported claims plausible "where the belief is based on factual information that makes the inference of culpability plausible." Ibid.

In Citizens United, offered by the Defendants in support of their dismissal motion, the Court only discarded those claims alleged upon "information and belief" because the facts alleged publicly available disclosures which, if true, should have been discovered by the Plaintiff and presented in his pleading as fact. Id. at 385 ("There is no reason Appellants could not find at least one [example] without any help from subpoenas, depositions, or interrogatories. They are, after all, alleging *public* disclosures, which by their very nature, would be easy to discovery if they occurred.")(emphasis in original).

In <u>Williams v. Classic Security</u>, featured by the Defendants as precedent for dismissal of the instant Complaint, the Court found the plaintiff's pleading inadequate only where "he pleads no facts sufficient to support the inference that his termination 'occurred under the circumstances giving rise to an inference of discrimination.'" <u>Williams v. Classic Security</u> at 2019 WL 4511953, at *10-11 (S.D.N.Y. Sept. 19, 2019). The Court reviewed the complaint, and could only find conclusions without any supporting facts. <u>Ibid</u>. ("Indeed, throughout his Amended Complaint [the plaintiff] repetitively pleads in a conclusory manner and without any supporting facts."

The facts in the instant matter that are within the exclusive knowledge and possession of the Defendants and pled "upon information and belief" are properly accepted as true for purposes of a 12(b)(6) motion to dismiss.

Defendants rely on <u>Soloviev v. Goldstein</u>, 104 F. Supp. 3d 232 (E.D.N.Y. 2015) for the proposition that the instant Plaintiff's case should be dismissed, because the Complaint contains allegations of her own wrongdoing. Defendants' reliance on <u>Soloviev</u> is misplaced. In <u>Soloviev</u>, the plaintiff was only disciplined after he became the subject to serious charges and an investigation by the National Collegiate Athletic Association. <u>Id</u>. at 249-250. His termination was found to be based on his actual actions, as codified by the charges and investigation of a reputable and binding governing association prior to termination.

There is no legitimate comparison between <u>Soloviev</u> and the instant matter, where the source of the charges levied at the Plaintiff were nothing but social media bile. The comparison to <u>Soloviev</u> is even less compelling in light of the Defendants' policy that their company does not rely on social media for personnel decisions.

While Defendants claim that the individual Defendant Jenny Johnson is not alleged to have participated in the termination of the Plaintiff, she continues to acknowledge and tout a role in the

firing in her numerous interviews. A cause of action for discrimination against an individual defendant is only properly dismissed where the plaintiff "has not alleged her personal involvement in any of the adverse employment actions he describes." Moore v. City of New York, 2017 WL 35450, at *70 (S.D.N.Y. Jan. 3, 2017).

**B.**

**1. The Defendants' Statements are Actionable Because They Implied a Basis in Undisclosed Facts to the Reasonable Reader**

The Defendants' motion ignores the core of the Plaintiff's defamation cause of action. The Defendants committed defamation not by calling the Plaintiff a racist, but by implying that they determined her to be a racist based upon an investigation which revealed facts undisclosed to its audience.

The Defendants are correct, at least in the abstract, when they say that calling someone a "racist" is typically nonactionable opinion. But the Plaintiff's claim is not merely that she was called a racist by the Defendants when she was not. Rather, it is the Plaintiff's claim that the Defendants conveyed to the public that they *determined* that the Plaintiff was a racist based on an investigation which they never actually performed and facts which they never actually had. It is not just the Defendants' conclusion, but rather their implication that their conclusion was grounded in undisclosed facts which makes their statements actionable.

While Defendants urge the Court to dismiss this cause of action because labeling someone a "racist" is an opinion, that is far from the end of the inquiry. "[T]he court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel

plaintiff.'" <u>Brian v. Richardson</u>, 87 N.Y. 2d 46, 51 (1995) *quoting* <u>Immuno AG v. Moor-Jankowski</u>, 77 N.Y.2d 235, 254 (1991).

In order for a statement to be "pure opinion" as the instant Defendants urge here, "the statement must either include a 'recitation of the facts upon which it is based,' or at least 'not imply that it is based upon undisclosed facts.'" <u>Hassan v. Dr. Kenneth Spicer</u>, 2006 WL 228958, at *5 (E.D.N.Y. Jan. 31, 2006). The Court continued: "otherwise, the statement will be deemed a 'mixed opinion,' which is actionable based on 'the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." <u>Ibid</u>.

"Where the author of a derogatory statement of opinion implies that it is based on facts not disclosed to his audience, a claim for defamation may be premised on this implied factual assertion." <u>Chiavarelli v. Williams</u>, 681 N.Y.S.2d 276, 277 (1st Dep't 1998). In <u>Afftrex, Ltd. V. General Electric Co.</u>, 161 A.D.2d 855 (3d Dep't 1990), for example, the Court applied this principle to find an actionable claim for defamation where defendant called plaintiff "an evil man" and therefore "was fired from his job." <u>Id</u>. at 905.

The three-factor test urged by the Defendants is the correct one, but they slight the importance and complexity of the third factor: "whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be an opinion, not fact." *See* <u>Gross v. New York Times Co.</u>, 82 N.Y.2d 146, 153 (1993). "It is the last of these factors that lends both depth and difficulty to the analysis." <u>Brian</u> at 51.

One of the factors considered by the Court in <u>Brian</u> was that the statement's author "disclosed that he had been (an adverse party's) attorney, thereby signaling that he was not a

disinterested observer." Id. at 53. Another was that the article was published in the opinions section of the newspaper, further signaling to the reader that this was an expression of opinion. Yet another was that "the predominant tone of the article, which was rife with rumor, speculation and seemingly tenuous inferences, furnished clues to the reasonable reader that (the article) was something less than serious, objective reportage." Ibid. "[T]he identity, role and reputation of the author may be factors to the extent that they provide the reader with clues as to the article's import." Id. at 52. Finally, the author of the challenged work "set out the basis for (his) personal opinion, leaving it to the readers to evaluate it for themselves." Id. at 53-54. Most importantly, "[t]hus, there was no suggestion in the article that there were additional undisclosed facts on which its credibility assessment had been based." It was only after consideration of these factors leading to the determination that the reasonable reader would not have believed that the defendant was conveying facts, that the Court dismiss the plaintiff's defamation claim.

The Court of Appeals summarized:

> In sum, both the immediate context of the article itself and the broader context in which the article was published made it sufficiently apparent to the reasonable reader that its contents represented the opinion of the author and that its specific charges about plaintiff were allegations and not demonstrable fact. Id. at 54.

The Court's Opinion in Brian relied heavily on its contrast of the facts in Gross v. New York Times Co., 82 N.Y.2d 146, 153 (1993). Brian at 52. In Gross, the Court of Appeals reversed the Appellate Division's order dismissing the plaintiff's defamation causes of action based on a series of factors, including "what purported to be a thorough investigation." Gross at 156.

Conveyance by a defendant to the reader that an investigation was performed and produced facts unknown to the public is a dispositive distinction which the instant Defendants do not address. Once the defendant has implied that an investigation was performed, it converts an

otherwise nonactionable opinion into an actionable defamation claim because it "'encourage(s) the reasonable reader to be less skeptical and more willing to conclude that they stated or implied facts." Gross at 156 *quoting* 600 W. 115th St. Corp. v. Von Gutfeld, 80 NY2d 130, 142 (1992).

Though calling someone a "racist" may constitute nonactionable opinion evidence under some circumstances, it is certainly not automatically so. Whether the statement was actionable or nonactionable is not an instant or an abstract determination. Rather, "[t]he dispositive inquiry, under either Federal or New York law, is 'whether a reasonable reader could have concluded that (the statement was) conveying facts about the plaintiff.'" Gross at 152 *quoting* 600 W. 115th St. Corp. at 139.

There is a critical distinction under New York law between statements of opinion which imply a basis in undisclosed facts, and statements of opinion which either recite the facts upon which that opinion was formed or do not imply the existence of such undisclosed underlying facts at all. *See* Gross at 153 ("[I]n determining whether a particular communication is actionable, we continue to recognize and utilize the important distinction between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener, and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts.") (internal citations omitted). Statements of opinion which imply a basis in undisclosed facts are actionable; only the latter category is not.

The reason for this distinction is "because a reasonable listener or reader would infer that 'the speaker or writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed.'" Gross at 153 *quoting* Steinhilber v. Alphonse, 68 N.Y.2d 283, 290 (1986). A full disclosure of the facts on which an opinion is based, on the other hand, lets the reader know that it is reading the author's

opinion or conjecture. *See* <u>Gross</u> at 154 ("In contrast, the latter are not objectionable because…a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture.")

"'When, however the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable.'" <u>Doe #1 v. Syracuse University</u>, 468 F. Supp. 3d 489 (N.D.N.Y. 2020) *quoting* <u>Steinhilber</u> at 289.

The test is not the word or words themselves, but whether a reasonable reader would interpret those words to be an assertion of provable fact. "[T]he courts are obliged to consider the communication as a whole, as well as its immediate and broader social contexts, to determine whether the reasonable listener or reader is likely to understand the remark as an assertion of provable fact." <u>Gross</u> at 155.

Disclosure of the facts upon which an opinion is based has often been a determining factor in dismissal of a plaintiff's defamation complaint. *See* <u>Silverman v. Daily News, L.P.</u>, 11 N.Y.S. 3d 674, 676 (2d Dep't 2015)(holding statements nonactionable because "there was full disclosure of the facts supporting the opinions"); <u>Russell v. Davies</u>, 948 N.Y.S. 2d 394, 395-396 (2d Dep't 2012) (holding statements nonactionable where opinions based on disclosed facts); <u>Cummings v. City of New York</u>, 2020 WL 882335, at *59 (S.D.N.Y. Feb. 24, 2020)(holding nonactionable opinion where "the facts…underlying the opinions were based on substantially true disclosed facts").

The Defendants' reliance on <u>Syracuse University</u> is misplaced because it does not involve the critical issue of the implication of undisclosed facts. Without the implication of undisclosed facts, the Court held that a reasonable reader would have to conclude that the statements were the

opinions of the defendants. The similarities between <u>Syracuse University</u> and the instant case highlighted by the Defendants are inconsequential because the <u>Syracuse University</u> defendants did not imply undisclosed facts to their audience.

The instant matter is a textbook actionable "mixed opinion" case. There is no other way to read "[f]ollowing our internal review of the incident in Central Park yesterday, we have made the decision to terminate the employee involved, effective immediately. We do not tolerate racism of any kind at Franklin Templeton," other than that the Defendants performed an investigation and thus held facts which the general public did not have, and that those facts determined the Plaintiff to be a racist. The Defendant could have refrained from implying it had additional facts, or could have disclosed what facts it actually had, but they did neither of those things. Especially when the speaker is an entity with the imprimatur of Franklin Templeton, the Defendants' statements were not pure opinion, and are subject to liability for defamation.

**2. The Plaintiff is not Subject to the Actual Malice Standard Because the Defendants' Announcement of the Discriminatory Termination of the Plaintiff was not "Lawful Conduct in Furtherance of the Exercise of the Constitutional Right of Free Speech"**

**2(a). In the Alternative, the Plaintiff's Allegation that Defendants Published Statements Telling the Public They had Performed an Investigation Which They Knew They had not Performed Constitutes Actual Malice**

The defamation alleged in this litigation was not lawful conduct, because it was the declaration of an employee's termination in violation of the NYCHRL, NYSHRL, and § 1981. The Defendants have no right or legitimate First Amendment interest in broadcasting its own unlawful conduct.

Defendants expand and contort the Plaintiff's defamation claim beyond the allegations in the Complaint so that it includes its statements "about systemic racism and its effect on the lives

of African-Americans." The Plaintiff has never alleged that the Defendants could or should not

have spoken out against racial injustice, or that these statements were defamatory. But the presence

of these non-defamatory statements in the same communications as the statements defaming

Plaintiff should not cloak the defamatory statements with protection as "lawful conduct."

It would be a perverse use of § 76-a to invoke a heightened standard for the proclamation

of an unlawful act by a commercial entity as "lawful conduct."

Even if held to the higher standard of actual malice, the Defendants' motion falls far short.

Defendant's argument in this section again neglects to address the heart of the issue on defamation.

Actual malice does not require the Plaintiff to show that Defendants knew she was not racist to

overcome this motion to dismiss, because that is not an accurate recapitulation of her defamation

claim. Rather, actual malice here requires the Plaintiff to demonstrate that Defendant published

statements that they had conducted an investigation and held facts determining that she was racist,

when they knew they had not conducted any such investigation and held no such facts.

The same Iqbal and Twombly standard of plausibility which governs the discrimination

sections of this brief apply equally to defamation. *See* Brimelow v. New York Times Co., 2021

WL 4901969, at *4 (2d Cir. Oct. 21, 2021)(joining "every circuit that has considered the matter…"

to "hold that the plausibility pleading standard applies to the actual malice standard in defamation

proceedings").  To survive a 12(b)(6) motion to dismiss, a plaintiff "'must plead plausible grounds

to infer actual malice by alleging enough fact(s) to raise a reasonable expectation that discovery

will reveal evidence of actual malice.'" Brimelow v. New York Times Co., 2021 WL 4901969, at

*3 (2d Cir. Oct. 21, 2021) *quoting* Biro v. Conde Nast, 807 F.3d 541, 546 (2d Cir. 2015). A

successful plaintiff may plead actual malice generally. Brimelow at *3-4 ("'Actual malice is not a

matter that requires particularity in pleading -- like other states of mind, it may be alleged generally...'") *quoting* Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016).

Actual malice is a significant hurdle, but is "by no means insurmountable." Biro at 545 ("The hurdles to plausibly pleading actual malice, though significant given the First Amendment interests at stake, are by no means insurmountable.") *citing* Robert D. Sack, Sack on Defamation § 16:2.2 at 16.7-8 (4th ed. 2010). "In practice, requiring that actual malice be plausibly alleged has not doomed defamation cases against public figures. To the contrary, district courts in and out of our Circuit have inferred actual malice at the pleading stage from allegations that referred to the nature and circumstances of the alleged defamation or previous dealings with the defendant." Biro at 545-546.

Though actual malice is subjective, the Court will typically infer actual malice from objective facts pled in the Complaint because "a defendant in a defamation action will rarely admit that he published the relevant statements with actual malice." Biro at 545 *citing* Celle v. Filipino Reporter Entertainers, Inc., 209 F.3d 163, 183 (2d Cir. 2000). The Second Circuit explained:

> And of course whether actual malice can plausibly be inferred will depend on the facts and circumstances of each case. For example, a plaintiff may allege that "a story [was] fabricated by the defendant" if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the information. Biro at 545 *citing* St. Amant v. Thompson, 390 U.S. 727, 732 (1968).

Instances where actual malice has been found to be lacking include Complaints that merely allege failure to properly investigate claims contained in a published statement, failure to utilize sufficient fact-checkers, or facts suggesting that a defendant "had reason to question the accuracy of the information at issue." *See* Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657 (1989)(well settled that "failure to investigate will not alone support a finding of actual

malice"); <u>Kipper v. NYP Holdings, Co.</u>, 12 NY3d 348, 355 (2009)("failure to employ fact-checkers, to attempt to verify the status of his license prior to publication, or to identify those individuals responsible for the false headline and statement" insufficient); <u>Rivera v. Time Warner, Inc.</u>, 56 AD3d 298, 298 (1st Dept. 2008)("actual malice cannot be inferred from factual allegations merely suggesting that [defendant] had reason to question the accuracy of the information at issue.")

In the instant matter, the Plaintiff alleges that the Defendants published statements that they had performed an investigation, when they knew that no investigation was performed. This was not a failure of research or diligence, this was a blatant and knowing falsehood.

### C., D., and E.

These sections are unopposed and intentionally left blank by the Plaintiff. The Plaintiff strongly disagrees with the Defendants' conclusion in "C" that their conduct was not "extreme and outrageous," but that disagreement is mooted by the Plaintiff's agreement with the Defendants' legal argument in "D." Similarly, the Plaintiff maintains the veracity of its factual assertions relative to the Defendants' argument in "E," but the factual disputes are mooted by agreement with the Defendants' legal argument in that section.

### <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' motion to dismiss should be denied in its entirety.

Dated:  November 10, 2021

Law Office of Andrea Paparella, PLLC

-and-

Litt Law, PC

*Attorneys for Plaintiff*

By:

_____

Pandemic Address:
4 Dunlap Street
Salem, MA 01970
Telephone: (617) 680-2400
Facsimile: (914) 462-3287
Email: amp@andreapaparella.com


-and-

789 Farnsworth Ave.
Bordentown, NJ  08505
Telephone: (908) 902-7071 Email:
MLitt@LittLaw.Net