**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMY COOPER,

               Plaintiff,

     v.

FRANKLIN TEMPLETON, FRANKLIN
TEMPLETON INVESTMENTS, FRANKLIN
RESOURCES, INC., FRANKLIN TEMPLETON
COMPANIES, LLC, JENNY JOHNSON,
FRANKLIN TEMPLETON CORPS. XYZ 1-10,
JOHN DOES and/or JANE DOES 1-10,

               Defendants.

Civil Action No. 1:21-cv-04692-RA

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page**

I.    COOPER'S ADMISSIONS RENDER HER DISCRIMINATION THEORIES
      IMPLAUSIBLE. ............................................................................................................1

II.   THE COMPANY'S TWEETS DO NOT ESTABLISH AN INFERENCE OF
      RACE DISCRIMINATION. .........................................................................................1

III.  COOPER'S COMPARATOR ALLEGATIONS DO NOT SUPPORT AN
      INFERENCE OF DISCRIMINATION. .......................................................................2

IV.   COOPER'S DEFAMATION CLAIMS FAIL BECAUSE THE CHALLENGED
      STATEMENTS ARE PROTECTED EXPRESSIONS OF OPINION. ..........................5

V.    ALTERNATIVELY, COOPER'S DEFAMATION CLAIMS MUST BE
      DISMISSED FOR FAILING TO PLAUSIBLY PLEAD ACTUAL MALICE. ..............8

VI.   COOPER CONCEDES THAT DISMISSAL OF CERTAIN CLAIMS IS
      APPROPRIATE. ......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Hakeem v. Parkinson*,
  523 F. App'x 19 (2d Cir. 2013) ..............................................................4

*Anderson v. N.Y. City Dep't of Fin.*,
  2021 WL 168476 (S.D.N.Y. Jan. 19, 2021) ...........................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................1, 2

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
  2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018) ..........................................10

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) ......................................................6

*Brian v. Richardson*,
  87 N.Y. 2d 46 (1995) ..............................................................................7

*Church of Scientology Int'l v. Behar*,
  238 F.3d 168 (2d Cir. 2001) ..............................................................9, 10

*Church of Scientology, Intern. v. Time Warner*,
  932 F. Supp. 589 (S.D.N.Y. 1996) ........................................................10

*Cochran v. NYP Holdings, Inc.*,
  58 F. Supp. 2d 1113 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) ..........................7

*Condit v. Dunne*,
  317 F. Supp. 2d 344 (S.D.N.Y. 2004) ......................................................7

*Cummings v. City of N.Y.*,
  2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) ...........................................6

*Doe #1 v. Syracuse University*,
  468 F. Supp. 3d 489 (N.D.N.Y. 2020) .....................................................8

*Gisel v. Clear Channel Commc'ns, Inc.*,
  94 A.D.3d 1525, 942 N.Y.S.2d 751 (4th Dep't 2012) ............................7

*Goetz v. Kuntsler*,
  625 N.Y.S2d 447 (Sup. Ct. N.Y. City. 1995) ..........................................7

*Gross v. New York Times Co.*,
  82 N.Y.2d 146 (1993) ...................................................................................................... 8

*Herbert v. Lando*,
  781 F.2d 298 (2d Cir. 1986) ......................................................................................... 10

*Iazzetti v. Town of Tuxedo*,
  2020 WL 4340872 (S.D.N.Y. July 27, 2020) ............................................................... 5

*Jewell v. NYP Holdings, Inc.*,
  23 F. Supp. 2d 348 (S.D.N.Y. 1998) ........................................................................... 10

*Maraschiello v. City of Buffalo Police Dep't*,
  709 F.3d 87 (2d Cir. 2013) ....................................................................................... 1, 2

*Masson v. N.Y. Mag., Inc.*,
  501 U.S. 496 (1991) ...................................................................................................... 9

*Moultrie v. Carver Found.*,
  669 F. App'x 25 (2d Cir. 2016) .................................................................................... 4

*Moultrie v. NYS Dep't of Corr. & Cmty. Supervision*,
  2015 WL 2151827 (S.D.N.Y. May 7, 2015) ................................................................. 5

*Salu v. Miranda*,
  830 F. App'x 341 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2643 (2021) ..................... 2

*Shumway v. United Parcel Serv., Inc.*,
  118 F.3d 60 (2d Cir. 1997) ........................................................................................... 2

*Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*,
  516 F. Supp. 742 (S.D.N.Y. 1981) .............................................................................. 10

*Tannerite Sports, LLC v. NBC Universal Media LLC*,
  135 F. Supp. 3d 219 (S.D.N.Y. 2015), *aff'd*, 864 F.3d 236 (2d Cir. 2017)................. 6

*Williams v. Metro-N. R.R.*,
  2020 WL 1489832 (S.D.N.Y. Mar. 27, 2020) .............................................................. 3

**Statutes**

Civil Rights Law, § 76-a ................................................................................................... 8

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................... 10

I.      **Cooper's Admissions Render Her Discrimination Theories Implausible**.

Dismissal of Cooper's claims is warranted because there is a much "more likely explanation[]" for Cooper's termination than race and sex discrimination.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  The patent implausibility of Cooper's discrimination claims is evident from the face of her Complaint:  Cooper admits that she was terminated after a video went viral where she was captured invoking another person's race to threaten police involvement and making a false call to the police, conduct for which she immediately and publicly apologized.  Compl. ¶ 1.  The close temporal proximity between Cooper's misconduct and her termination reveals that the "more likely explanation[]" for Cooper's termination is her own admitted misconduct, not discrimination. It is entirely reasonable for a company to terminate an at-will employee in the face of these circumstances.  Cooper's discrimination claims are not plausible.

II.     **The Company's Tweets Do Not Establish An Inference of Race Discrimination**.

Cooper attempts to save her discrimination claims by arguing that "Defendants' own words and actions provide the required plausible support" for an inference of race discrimination, because Defendants connected their "stance against racism with their termination of [Cooper]."[1]  Opp. at 16.  However, controlling precedent from this Circuit is clear that "'[r]acism' is not a race." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013).  In *Maraschiello,* the plaintiff alleged – like Cooper does here – that the defendant's comment that he was a "racist" established the necessary inference of race discrimination.  *Id.*  The Circuit Court rejected this argument and held that while a statement suggesting that someone is racist may indicate "unfair dislike," it "does not indicate that the object of the statement is being rejected *because of his race*."

---

[1] Cooper's suggestion that the company's Tweets explicitly referenced "race and racism" is demonstrably false.  Opp. at 5.  While both Tweets stated that the company does not condone or tolerate racism, neither Tweet references Cooper's or the birdwatcher's race.  Compl. ¶¶ 8-11; Dkt. 27-8, 27-10.

*Id.*  Thus, the company's Tweets do not, and cannot, provide the requisite link between Cooper's termination and her race.

**III.**   **Cooper's Comparator Allegations Do Not Support An Inference of Discrimination.**

Cooper's discrimination claims hinge on her argument that three facially dissimilar males who she concedes "certainly did not hold identical positions" to her, were treated differently than her.  Opp. at 16-19.  Cooper admits (notwithstanding her threadbare allegations) that courts in this Circuit have made clear that the standard for comparators is "stringent" and that dismissal is proper at the pleadings stage where there are insufficient facts in the Complaint to support that the alleged comparators were similarly situated *in all material respects*.  *Id*. at 16-17.  She nonetheless then asks this Court to recast and lower the standard as one requiring *only* common employment or association with a broader global organization.  *Id*. at 18.  The Court should decline to do so and dismiss Cooper's discrimination claims for what they are:  factually unsupported and legally implausible.

Cooper's kitchen-sink comparator allegations (pled mainly upon "information and belief" and without any detail), fail to meet the *Iqbal* plausibility requirements and demonstrate non-comparability.[2]  Cooper's supporting "facts" are limited as follows:  (1) *Vivek Kudva* works in India as head of Franklin's Asia Pacific distribution; upon information and belief, he is the unnamed individual referenced in Johnson's Yahoo! Finance interview; and upon information and belief, Defendants "did not discipline Kudva in any meaningful way" for personal trading misconduct in India (Compl. ¶¶ 28-31, 99); (2) *"C.K."* is a "Financial Institutions" executive who

---

[2] Contrary to Cooper's contention, pleading on "information and belief" is only sufficient when it is supported by a statement of facts that creates a plausible inference of their truth.  *See Salu v. Miranda*, 830 F. App'x 341, 345-46 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2643 (2021) (dismissing discrimination claims where the critical allegation necessary to render the claim plausible "has no factual basis to support it, but rather is simply stated in a conclusory fashion based upon 'information and belief'"); *cf. Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (no inference of discrimination where, like here, plaintiff had no personal knowledge of comparators' violations or whether anyone reported the violations).

works in an undisclosed location; and upon information and belief, around 2017 an unidentified person made a complaint that "C.K." "committed acts of sexual harassment in the workplace," and "C.K." was not terminated (Cooper provides zero details, such as which "employees and/or interviewees" made the complaint, who "C.K." allegedly harassed, what the alleged conduct was, or to whom the complaint was allegedly made or reported)[3] (Compl. ¶¶ 109, 125, 127); and (3) *Chuck Johnson* was a *non-employee* former director on Franklin's Board of Directors; and upon information and belief, Mr. Johnson was involved in a domestic incident in 2002 and then, over a decade later in 2013, was appointed to Franklin's Board of Directors (Compl. ¶¶ 104-108).[4]

Cooper's comparator allegations do not and cannot support an inference of race or sex discrimination for multiple reasons. First, Cooper does not include any factual allegations regarding the performance, evaluation, and discipline standards to which her alleged comparators Kudva, "C.K.," and Mr. Johnson were subject. *See Anderson v. N.Y. City Dep't of Fin.*, 2021 WL 168476, at *2 (S.D.N.Y. Jan. 19, 2021) (dismissing plaintiff's claims where plaintiff "pled nothing about [his comparators'] positions and whether the same policies . . . should have been applicable to them in those positions"). Nor could she. As demonstrated above, Cooper's allegations make clear that each of her three alleged comparators held vastly different positions and that the only two who were employees worked in different groups and locations. These fundamental differences are fatal to Cooper's claims. *See e.g., Williams v. Metro-N. R.R.*, 2020 WL 1489832, at *8 (S.D.N.Y. Mar. 27, 2020) ("The difference in work locations, with different work environments

---

[3] Equally tenuously, Cooper alleges that "C.K." was not disciplined after (i) a client told Cooper at a 2016 industry conference that "C.K." offended him when he said he "wanted to go somewhere to meet women or to an adult entertainment venue;" (ii) Cooper witnessed "C.K." telling a story about making advances on a hotel clerk; and (iii) individuals in the group managed by "C.K." allegedly committed plagiarism. Compl. ¶¶ 112, 116-117, 120, 123.

[4] Cooper does not allege that Mr. Johnson was an employee in 2013 when he joined Franklin's Board of Directors (because he was not).

and different supervisors making disciplinary decisions, undermines any claim to being 'similarly situated'") (citation omitted).

In light of her fatal admissions, Cooper constructs a factually unsupported argument in her Opposition that there is a "company-wide double standard" between males and her, which purportedly excuses the need to allege comparable positions, supervisors, performance and disciplinary standards, and conduct.[5]  Opp. at 18.  Cooper contends, instead, that all she needs to allege "is their employment by the Defendants."  Opp. at 18.  Cooper is wrong.  Taken to its logical conclusion, Cooper's theory is that all 10,000+ world-wide employees are similarly-situated to her "in all material respects" by virtue of their mutual employment (or association with) with any entity under the broad Franklin umbrella organization and that any different discipline, even for dissimilar conduct, experienced by any male in any role anywhere in the world raises an inference of sex discrimination.  That simply is not the standard in this Circuit.  *See, e.g., Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 21 (2d Cir. 2013) (the "standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases") (citation omitted); *Moultrie v. Carver Found.*, 669 F. App'x 25, 26 (2d Cir. 2016) (affirming dismissal of discriminatory termination claim where plaintiff and comparators were employed in different positions).  Accordingly, Cooper failed to plead (as she must) that she is

---

[5] The alleged "company-wide double standard" is predicated on an alleged "protocol" invented by Cooper based solely on her mis-interpretation of a comment made by Johnson in a Yahoo! Finance interview conducted *after* Cooper's termination.  Opp. at 9, 13, 18-19.  Not only is Johnson's one-off comment insufficient to establish the existence of an otherwise unidentified policy or protocol, but also Cooper's own allegations belie her theory that the company relied exclusively on social media in violation of said "protocol" in terminating her.  *See* Compl. ¶ 36 (the company interviewed Cooper).  Moreover, in making this argument Cooper is (i) plainly mischaracterizing the representative social media posts (Dkt. 27-6), which were attached to Defendants' Opening Brief to provide the Court with the broader social context for her defamation claims; and (ii) implying, implausibly, that the company also ignored all of the other information in the public record, including the global viral video memorializing her misconduct, her same day public apology, and a Facebook post by the birdwatcher contemporaneously documenting the encounter.  Dkt. 27-1 to 27-3, 27-5.

similarly situated *in all material respects* to her alleged comparators and her discrimination claims should be dismissed.

Second, Cooper's discrimination claims fail for the independent reason that Cooper does not plead that she and her comparators were subject to different discipline for comparable conduct. Cooper was terminated after she was captured on video invoking a man's race to threaten police involvement and making an admittedly false call to the police. Cooper's conduct was serious and, as she admits, became an international, "racial flashpoint." Compl. ¶ 1. The seriousness of Cooper's conduct is underscored by her own public apology, which acknowledges that her conduct was "unacceptable" and "inappropriate[]." Dkt. 27-2, 27-3. In contrast, Cooper vaguely alleges, upon information and belief, that three individuals engaged in misconduct at various times over the last two decades, none of which involves issues of racism. Thus, Cooper's conduct is qualitatively different, and nothing about the thinly alleged circumstances of her claimed comparators supports an inference of race or sex discrimination. *See Moultrie v. NYS Dep't of Corr. & Cmty. Supervision*, 2015 WL 2151827, at *3 (S.D.N.Y. May 7, 2015) ("Less severe punishment for objectively less serious or qualitatively different misconduct does not raise an inference of discrimination"); *Iazzetti v. Town of Tuxedo*, 2020 WL 4340872, at *9 (S.D.N.Y. July 27, 2020) (dismissing claims where, among other things, plaintiff failed to plead the "infractions were identical in number and nature to Plaintiff's").

## IV.   Cooper's Defamation Claims Fail Because the Challenged Statements Are Protected Expressions of Opinion.

Although Cooper attempts to claim that Defendants defamed her, she now acknowledges that it was "*not* by calling [her] a racist." Opp. at 21 (emphasis added). Instead, injecting words not used, Cooper argues that the company "conveyed to the public that they *determined* [she] was a racist based on an investigation which they never actually performed[.]" *Id.* (emphasis in

original).  In order to survive a motion to dismiss, however, a plaintiff must "make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Tannerite Sports, LLC v. NBC Universal Media LLC*, 135 F. Supp. 3d 219, 232 (S.D.N.Y. 2015), *aff'd*, 864 F.3d 236 (2d Cir. 2017) (citation omitted); *see also Biro v. Conde Nast*, 883 F. Supp. 2d 441, 465–66 (S.D.N.Y. 2012).  Cooper falls woefully short of meeting that burden.

To review, the company released two Tweets at the time of the events in question:

1.   On May 25, 2020, at 10:43 pm ET: "We take these matters very seriously, and we do not condone racism of any kind. While we are in the process of investigating the situation, the employee involved has been put on administrative leave."

2.   On May 26, 2020, at 2:24 pm ET: "Following our internal review of the incident in Central Park yesterday, we have made the decision to terminate the employee involved, effective immediately. We do not tolerate racism of any kind at Franklin Templeton."

Dkt. 27-8, 27-10.  On their face, neither of these Tweets calls Cooper a racist, nor can they reasonably be read as asserting that the company had conducted an "investigation [and] determined indisputably that Plaintiff was a racist[.]"  Compl. ¶ 2.

Assuming that the Tweets reasonably can be read as asserting that Cooper's conduct and words depicted on the video (*e.g.*, her threat to call the police and "tell them there's an African American man threatening my life") was racist, or that Cooper herself was racist, the statements are classic expressions of opinion, incapable of being proven true or false.  *See Cummings v. City of N.Y.*, 2020 WL 882335, at *20 (S.D.N.Y. Feb. 24, 2020) ("Courts in New York have consistently held that terms like 'racist' constitute nonactionable opinion.") (citing cases); *see also* Dkt. 26 at 15-17 (citing cases).

Cooper's Opposition focuses on the May 26 Tweet, erroneously arguing that the company's reference to "an internal review" of the "incident in Central Park yesterday" somehow changes the outcome in this case and converts a pure opinion to an actionable mixed opinion. *See* Opp. at 26. This argument simply ignores that a pure opinion may be based either on facts disclosed by the speaker *or facts known to the audience*.[6] Here, the subject matter of the May 26 Tweet was a matter of public knowledge to a mass audience. *See* Dkt. 27-1 to 27-2, 27-5 to 27-7. Indeed, Cooper herself alleges that although none of these statements identified her by name, the public "knew and understood that the subject of Franklin Templeton's [May 26, 2020] statement was Plaintiff," thus conceding, as she must, that her role in the Central Park incident was common public knowledge *before* the May 26 Tweet. Compl. ¶ 13. *See also* Dkt. 27-2 (Cooper's May 25 apology); n. 7, *infra*. Further, because that Tweet explicitly referenced the Central Park incident, which was "widely reported by [] media outlets" and already well-known to the audience, "it cannot be said that [the] statements were based on undisclosed facts[.]" *Gisel*, 94 A.D.3d at 1526, 942 N.Y.S.2d 751. It is Cooper, not the Defendants, who fails to recognize that the "immediate context" of the statements and the "broader context in which [they were] published" made it "sufficiently apparent to the reasonable reader" that the statements were expressions of opinion, not verifiable assertions of fact. *Brian v. Richardson*, 87 N.Y. 2d 46, 54 (1995); *see also* Opp. at

---

[6] *See Condit v. Dunne*, 317 F. Supp. 2d 344, 369-70 (S.D.N.Y. 2004) (dismissing defamation claim where statements were based on "information uncontroverted in the complaint and known to the public"); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1122 & n.5 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) (statement about what "history" showed about Johnny Cochran's lack of truthfulness was reasonably understood as based on widespread knowledge of his representation of O.J. Simpson, publicity about which the court took judicial notice); *Gisel v. Clear Channel Commc'ns, Inc.*, 94 A.D.3d 1525, 942 N.Y.S.2d 751 (4th Dep't 2012) ("Because [defendant's] statements were based on facts that were widely reported by Western New York media outlets and were known to his listeners, it cannot be said that his statements were based on undisclosed facts[.]"); *Goetz v. Kuntsler*, 625 N.Y.S2d 447, 452 (Sup. Ct. N.Y. City. 1995) (widespread reporting and discussion of plaintiff shooting four youths on a subway train rendered description of him as a "murderous vigilante" a statement of opinion based upon widely known facts). *See also* Dkt. 26 at 25-26 (citing authorities).

22.  The Court need go no further to dismiss Counts Four and Five of the Complaint for failing to

plausibly plead claims for defamation.[7]

## V.   Alternatively, Cooper's Defamation Claims Must Be Dismissed For Failing To Plausibly Plead Actual Malice.

Even if the May 26 Tweet was not a statement of opinion (as it clearly is), New York's

anti-SLAPP statute, Civil Rights Law, § 76-a, independently requires Cooper to establish by "clear

and convincing evidence" that the statement was published with actual malice, *i.e.*, with

"knowledge of its falsity or with reckless disregard of whether it was false."  *Id.* § 76-a (2).[8]

Remarkably, Cooper argues that § 76-a "does not require [her] to show that Defendants knew she

was not a racist to overcome this motion to dismiss."  Opp. at 28.  But because the gist of her claim

is that the company allegedly "determined" her to be a racist, that is precisely what the statute

requires.  Cooper's disavowal of any obligation to satisfy this statutory mandate by itself requires

dismissal of her defamation claims.

Cooper instead mistakenly argues that it is enough for her to allege that "Defendants

published statements that they had performed an investigation, when they knew that no

investigation was performed."  Opp. at 27.  This argument fails as a matter of law.

---

[7] Contrary to Cooper's argument, *Doe #1 v. Syracuse University*, 468 F. Supp. 3d 489 (N.D.N.Y. 2020) is fatal to her claims.  In *Doe*, as here, the defendants were sued for describing the conduct of plaintiffs captured on videotape as racist.  *Id.* at 496-97, 511, 514.  The defendants publicly stated that the video clips they commented on were "not the only evidence, and there are other videos as well," but would not disclose their contents due to an "ongoing potential criminal and judicial investigation[.]"  *Id.* at 497-98, 512.  The court acknowledged the mixed opinion doctrine, but nevertheless dismissed the particular claim as pure opinion.  *Id.* at 511-12, 514.  Cooper's reliance on *Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993) similarly is misplaced.  *Gross* involved a series of eight *New York Times* investigative reports published over the course of 13 months about the corrupt practices of a medical examiner, hardly analogous to statements of opinion about a prior day's viral video in the public domain.  *Id.* at 153.

[8] Cooper argues that because the "defamation alleged in this litigation is not lawful conduct," her claims are not governed by § 76-a.  She is incorrect.  It is entirely reasonable, and lawful, for a company involuntarily drawn into a raging controversy on a matter of significant public interest to address the public.  Further, Cooper simply ignores that Defendants' statements are independently protected by § 76-a as "communication[s] in a place open to the public or a public forum in connection with an issue of public interest[.]"  Civil Rights Law § 76-a (1)(a)(1).

First, no reasonable reader would interpret the May 26 Tweet as asserting that within 24 hours of the Central Park incident the company had conducted a full investigation and determined that Cooper was "indisputably" a racist.  Compl. ¶ 2.  The Tweet simply said no such thing.  A statement never made by a defendant obviously cannot have been published with knowledge of falsity.

Second, Cooper cannot plausibly allege that this statement was even false, let alone published with actual malice.  *See Masson v. N.Y. Mag., Inc.*, 501 U.S. 496, 514 (1991) (actual malice requires proof of falsity); *see also* Dkt. 27 at 20 (citing cases).  The Complaint does not dispute that before publishing the May 26 Tweet, the company reviewed the video of the Central Park incident.  Cooper admits that the company interviewed her on May 25.  Compl. ¶¶ 36-37.  And she does not dispute that the company reviewed both her public apology and the statement released by the man she encountered in Central Park—both of which were published the same day as the incident and before the company's May 26 Tweet.  These concessions preclude any plausible allegation that the company falsely stated that it performed an "internal review of the incident" or made such statement with actual malice.  As for Cooper's criticism of the adequacy of the company's review, and her claims that more should have been done, they are nothing more than a claim of negligence that is legally insufficient to establish actual malice.  *See* Compl. ¶ 69; *id.* ¶¶ 36-52; *see also* Dkt. 26 at 21 (citing cases).

Finally, because Cooper has disavowed any obligation to prove that any alleged statement that she is a racist was made with actual malice, she is not entitled to recover for other subsidiary statements that merely imply the same view.  Indulging her interpretation of the May 26 Tweet, that is precisely what she is attempting to do, because, according to her, that Tweet implied that she is racist.  Her theory fails under the subsidiary meaning doctrine.  *See Church of Scientology*

*Int'l v. Behar*, 238 F.3d 168, 176 (2d Cir. 2001) (affirming judgment of district court where challenged statements were subsidiary to statements made without actual malice; "when a 'published view' of a plaintiff is not actionable as libel, other statements made in the same publication are not 'actionable if they merely imply the same view, and are simply an outgrowth of and subsidiary to those claims upon which it has been held that there can be no recovery'") (citation omitted); *Herbert v. Lando*, 781 F.2d 298, 312 (2d Cir. 1986) ("[T]o base [a] defamation action on subsidiary statements whose ultimate defamatory implications are themselves not actionable, we believe, would be a classic case of the tail wagging the dog.").[9]

In sum, Cooper's failure to plausibly allege any actual malice is fatal to her defamation claims.[10]

## VI.   Cooper Concedes That Dismissal of Certain Claims Is Appropriate.

Cooper does not oppose Defendants' Motion to Dismiss her IIED and negligence claims and, therefore, has abandoned those claims. *See Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *8 (E.D.N.Y. Oct. 1, 2018) (dismissing IIED and negligence claims as abandoned and explaining that "courts in this circuit have found that a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims").

---

[9] *Herbert's* "subsidiary meaning" doctrine is properly invoked on a Rule 12 motion. *See Church of Scientology, Intern. v. Time Warner*, 932 F. Supp. 589, 595 (S.D.N.Y. 1996) (the "determination need not be based on statements proven, or conceded, to be true, . . . but may be based on statements that are either unchallenged, . . . or nonactionable") (citing *Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*, 516 F. Supp. 742, 750 (S.D.N.Y. 1981) and *Herbert*, 781 F.2d at 312); *see also Behar*, 238 F.3d at 176 (the doctrine is "merely a gloss on constitutional actual malice"); *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 395 (S.D.N.Y. 1998) (the "procedural posture of [the] motion is not dispositive").

[10] Cooper's claim that Johnson made knowingly false statements in online interviews is even more far-fetched. All of the reasons Cooper's actual malice claim against the company fails apply equally to the claims against Johnson. In addition, by the time Johnson was interviewed, additional facts existed that further preclude any plausible allegation that Johnson knew any of her statements were false or had serious doubts as to whether the statements were true. *See, e.g.*, Dkt. 27-11(New York City Commission on Human Rights announcement); Dkt. 27-12 (Manhattan District Attorney's Office statement).

-10-

Dated: December 8, 2021

Respectfully submitted,

Morgan, Lewis & Bockius LLP

By: */s/ Grace E. Speights*
    Grace E. Speights (*pro hac vice*)
    1111 Pennsylvania Avenue, NW
    Washington, D.C. 20004-2541
    Tel: 1.202.739.5189
    Email: grace.speights@morganlewis.com

    Jonathan Albano (*pro hac vice forthcoming*)
    One Federal Street
    Boston, MA 02110-1726
    Tel: 1.617.341.7700
    Email: jonathan.albano@morganlewis.com

    Nicole M. Zito
    101 Park Avenue
    New York, NY 10178-0060
    Tel: 1.212.309.6707
    Email: nicole.zito@morganlewis.com

    *Attorneys for Defendants*